265 S.W.3d 507 (2008)
In the Interest of A.A.A.
No. 01-07-00160-CV.
Court of Appeals of Texas, Houston (1st Dist.).
June 26, 2008.
Rehearing Overruled August 19, 2008.
*509 William B. Connolly, William B. Connolly & Associates, Houston, TX, for Appellant.
Sandra D. Hachem, Senior Assistant County Attorney, Houston, TX, for Appellee.
Panel consists of Justices TAFT, HANKS, and HIGLEY.

OPINION
GEORGE C. HANKS, JR., Justice.
We withdraw our opinion and judgment issued January 24, 2008 and issue this one in its stead. We grant the Texas Department of Family and Protective Services's ("DFPS") motion for rehearing.
In this accelerated appeal, Shde Aza Hurst challenges the trial court's decree terminating her parental rights to her minor child, A.A.A., and naming DFPS as A.A.A.'s sole managing conservator. In five issues, Hurst argues that the evidence is legally and factually insufficient to support the trial court's findings under Section 161.001. TEX. FAM.CODE ANN. § 161.001 (Vernon Supp.2007). In her sixth issue, Hurst asserts that, if we reverse the trial court's termination of her parental rights, we should also reverse the trial court's appointment of DFPS as sole managing conservator. We affirm.
*510 Paul Alexander, whose parental rights were also terminated in the decree, filed a notice of appeal, but did not file a brief or a motion to extend time to file a brief, and he has not reasonably explained his failure to file a brief. Accordingly, we dismiss Alexander's appeal for want of prosecution. See TEX.R.APP. P. 38.8(a)(1).

Background
A.A.A. was born April 13, 2005. During the summer of 2005, her mother, Shde Hurst, was living in Louisiana with her boyfriend, Paul Alexander. Alexander claims that he is A.A.A.'s father, although DNA test results were not available at trial. In September 2005, Hurst ended her relationship with Alexander, after living with him for six months, and she and A.A.A. moved to a Houston shelter. After arriving at the shelter, Hurst worked at McDonald's for about one month and also began attending night school.
On January 24, 2006, Hurst left eight-month-old A.A.A. at the shelter and went to Wal-Mart. While at Wal-Mart, Hurst was arrested for shoplifting and spent two days in a Harris County jail. Hurst claims that she was shoplifting cough medicine because A.A.A. was sick. On January 25, when Hurst did not return to the shelter, DFPS received a referral of neglectful supervision of A.A.A. The next of kin was supposed to have picked up A.A.A. on January 24, but never arrived. When DFPS called the contacts on Hurst's emergency list, the first contact indicated that she could not care for the child, and the second contact had a disconnected number. A.A.A. was then taken into DFPS care. On January 26, DFPS filed a petition for protection of a child, conservatorship, and termination of the parent-child relationship, and the trial court issued a temporary order naming DFPS as A.A.A.'s temporary sole managing conservator. DFPS initially placed A.A.A. in foster care, but in May 2006, A.A.A. was moved to Hurst's relative. This relative has expressed an interest in adopting A.A.A.
Hurst was released from county jail on January 25 at 5:55 p.m. She testified that, by the time she was released, DFPS had already had possession of A.A.A. for one day. She also stated that DFPS told her that A.A.A. would not be returned until she completed the required process. After being released, Hurst moved to another shelter in Pasadena, Texas, for a few weeks and then moved in with a friend in Houston until sometime in June. Hurst claimed that she worked at McDonald's during this period, although A.A.A.'s guardian ad litem testified that Hurst told her she had been working at the McDonald's for about three weeks as of June 1.
In June, Hurst moved back to Louisiana where she moved back and forth between Alexander and her sick mother, whom she assisted. Hurst stated that, once back in Louisiana, she babysat two children, ages seven and nine, for around seven months and was making about $300 every two weeks. A.A.A. remained in Texas with Hurst's relative. At the time of trial, Hurst testified that she was currently living with Alexander at an apartment in Lake Charles, where she planned on staying and where she has arranged for daycare for A.A.A. She also stated that she was working at a gas station making $7.25 an hour.
A family service plan was implemented, outlining the services Hurst was to complete in order to be reunited with A.A.A. Hurst signed this plan on March 9, and, on March 23, the trial court ordered Hurst to comply with the plan. Brandi Sewell-Hall, the appointed caseworker on A.A.A.'s case from January 2006 until December 2006, testified that, during her time on the case, *511 DFPS tried to help Hurst to complete her services but Hurst failed to complete any of the services except for a psychological evaluation. Hall also stated that, during the year she was the assigned caseworker, Hurst only visited A.A.A. two times, even though she could have visited twice a month while A.A.A. was in foster care, and more often once Hurst's relative had custody of A.A.A. Hurst testified that she left a message on Hall's answering machine indicating that she was moving to Louisiana. Hall, however, stated that she does not remember such a message.
Elizabeth Bolling, the assigned caseworker from January 19, 2007 until the time of trial, testified that Hurst had only seen A.A.A. once during that time. Bolling stated that it is in A.A.A.'s best interest to remain with Hurst's relative. A.A.A.'s guardian ad litem testified that A.A.A. had bonded with Hurst's relative and was thriving in her current environment.
Hurst testified that her failure to comply with the family service plan was due to transportation problems and the unavailability of parenting classes, although she testified at trial that she made a choice not to catch the bus to attend the parenting classes. She also testified that she completed the parenting classes days before trial and just needed to pick up the certificate.
Hurst testified that she visited A.A.A. six times before she moved back to Louisiana. She also stated that she called A.A.A. every day after she moved to Louisiana. Hurst claimed that she did not visit A.A.A. more frequently because she believed she could only visit A.A.A. at the DFPS office. Bolling confirmed that Hurst had stated that she believed all visits with A.A.A. were to be at the DFPS office. While Hurst admitted that she did not provide financial support for A.A.A. after she was taken into DFPS care, Hurst testified that she brought clothing and shoes to the DFPS office approximately six times.
DFPS petitioned to have Hurst's parental rights terminated on January 26, 2006. Permanency hearings occurred on July 27 and November 14, 2006, and on February 6, 2007. A bench trial occurred on DFPS's parental-termination suit on February 6, 2007, and, on February 27, the trial court signed a judgment terminating Hurst's and Alexander's parent-child relationship with A.A.A. and appointing DFPS as A.A.A.'s sole managing conservator.

Sufficiency
In issues one through five, Hurst challenges the trial court's termination of her parental rights because the evidence is legally and factually insufficient to support the trial court's finding that she engaged in conduct set out as grounds for termination pursuant to Texas Family Code subsections 161.001(1)(E), (F), (N), and (O) and the trial court's finding that termination was in the best interest of the child pursuant to subsection 161.001(2).

Standard of Review
Because parental-rights termination "is complete, final, irrevocable, and divests for all time that natural right ...[,] the evidence in support of termination must be clear and convincing before a court may involuntarily terminate a parent's rights." Holick v. Smith, 685 S.W.2d 18, 20 (Tex.1985) (citing Santosky v. Kramer, 455 U.S. 745, 747, 102 S.Ct. 1388, 1391, 71 L.Ed.2d 599 (1982); Richardson v. Green, 677 S.W.2d 497, 500 (Tex.1984)). "`Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM.CODE. ANN. § 101.007 (Vernon *512 2002). This heightened burden of proof results in a heightened standard of review.
When determining legal sufficiency, we review "all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." In re J.F.C., 96 S.W.3d 256, 266 (Tex.2002). To give appropriate deference to the factfinder's conclusions, we must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. Id. We disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible. Id. This does not mean that we must disregard all evidence that does not support the finding. Id. Disregarding undisputed facts that do not support the finding could skew the analysis of whether there is clear and convincing evidence. Id. Therefore, in conducting a legal-sufficiency review in a parental-termination case, we must consider all of the evidence, not only that which favors the verdict. See City of Keller v. Wilson, 168 S.W.3d 802, 817 (Tex.2005).
In determining factual sufficiency under the clear and convincing burden, we must consider whether the evidence is sufficient to produce in the mind of the factfinder a firm belief or conviction as to the truth of the allegation sought to be established. In re C.H., 89 S.W.3d 17, 26 (Tex.2002). We consider whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding. J.F.C., 96 S.W.3d at 266. "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." Id.
The natural rights that exist between parents and their children are of constitutional dimension. Holick, 685 S.W.2d at 20. Therefore, termination proceedings should be strictly scrutinized, and the involuntary termination statutes should be strictly construed in favor of the parent. Id. at 20-21. However, "[j]ust as it is imperative for courts to recognize the constitutional underpinnings of the parent-child relationship, it is also essential that emotional and physical interests of the child not be sacrificed merely to preserve that right." C.H., 89 S.W.3d at 26.
For parental rights to be involuntarily terminated, it must be found by clear and convincing evidence that the parent engaged in conduct set out in subsection 161.001(1) and that termination would be in the child's best interest pursuant to subsection 161.001(2). TEX. FAM.CODE ANN. § 161.001 (Vernon Supp.2007).

Failure to Comply with Court Order
In her fourth issue, Hurst asserts that the evidence is legally and factually insufficient to support the trial court's finding that Hurst engaged in conduct pursuant to subsection 161.001(1)(O). To terminate parental rights based on subsection 161.001(1)(O), a trial court must find by clear and convincing evidence that the parent
failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Protective and Regulatory Services for not less than nine months as a result of the child's removal from the parent under Chapter 262[1] for the abuse or neglect of the child.
*513 TEX. FAM.CODE ANN. § 161.001(1)(O) (Vernon Supp.2007).
Hurst does not dispute that A.A.A. was in DFPS custody for at least nine months or that she did not comply with all the requirements of her family service plan. Instead, she argues that DFPS did not meet its burden of proof under subsection 161.001(1)(O) because A.A.A. was not removed from Hurst as a result of abuse or neglect, but solely because she had been arrested and was unable to return to A.A.A. at the shelter.[2]
DFPS counters by asserting that the Legislature did not intend to require a finding of abuse or neglect of the child under subsection 161.001(1)(O). Instead, according to DFPS, this language merely clarifies that removal under this subsection is proper if the child was removed for any reason under Chapter 262. DFPS also argues that the Texas Supreme Court has shown that proof of abuse or neglect is not required for a finding pursuant to subsection 161.001(1)(O).
Because this appeal requires us to interpret a section of the Texas Family Code, we restate the basic principles of statutory construction. Interpreting statutes is a legal matter, subject to de novo review. Bragg v. Edwards Aquifer Auth., 71 S.W.3d 729, 734 (Tex.2002). A trial court has no discretion when evaluating a question of law. See Huie v. DeShazo, 922 S.W.2d 920, 927 (Tex.1996); Walker v. Packer, 827 S.W.2d 833, 840 (Tex.1992).
The overriding goal of statutory interpretation is to determine the Legislature's intent. Cont'l Cas. Co. v. Downs, 81 S.W.3d 803, 805 (Tex.2002). In order to ascertain legislative intent, we first look to the plain and common meaning of the words used by the Legislature. TEX. GOV'T CODE ANN. § 311.011 (Vernon 2005); Argonaut Ins. Co. v. Baker, 87 S.W.3d 526, 529 (Tex.2002). It is a well-settled rule of statutory construction that every word of a statute must be presumed to have been used for a purpose. In re Bell, 91 S.W.3d 784, 790 (Tex.2002). To ascertain legislative intent, however, we must look to the statute as a whole and not to its isolated provisions. Morrison v. Chan, 699 S.W.2d 205, 208 (Tex.1985); Tex. Dep't of Banking v. Mount Olivet Cemetery Ass'n, 27 S.W.3d 276, 283 (Tex.App.-Austin 2000, pet. denied). In ascertaining legislative *514 intent, we do not confine our review to isolated statutory words, phrases, or clauses, but we instead examine the entire act. Meritor Auto., Inc. v. Ruan Leasing Co., 44 S.W.3d 86, 90 (Tex.2001).
In this case, we are called upon to interpret the meaning of "removal from the parent under Chapter 262 for abuse or neglect of the child." DFPS contends that this phrase merely clarifies that removal under subsection 161.001(1)(O) is proper if the child was removed for any reason under Chapter 262. However, we must presume that the phrase "abuse or neglect of the child" was used by the Legislature for a reason. See Bell, 91 S.W.3d at 790.
DFPS also asserts that the supreme court has addressed the issue of whether "abuse or neglect" are requirements of subsection 161.001(1)(O). In J.F.C., the supreme court determined:
The evidence establishes as a matter of law that the parents failed to comply with the court's orders specifying the actions the parents had to take for the DPRS to return the children to the parents. The record also conclusively establishes that the children were removed from their parents under Chapter 262 of the Family Code, and it is undisputed that they were in the DPRS's custody for more than nine months after their removal. Accordingly, the parental conduct described in subsection 161.001(1)(O) of the Family Code was established as a matter of law.
96 S.W.3d at 278-79 (Tex.2002). Thus, in holding that subsection 161.001(1)(O) was conclusively established, the supreme court's analysis did not include whether the child at issue was removed for abuse or neglect. DFPS contends that, by not mentioning that the child was removed for abuse or neglect, the supreme court eliminated abuse or neglect as a required element of subsection 161.001(1)(O). We disagree.
We first note that the specific question of whether a child must be removed under Chapter 262 for that child's own abuse or neglect was not brought before the court in J.F.C. Instead, the court was asked to address the constitutionality of the broad-form jury charge on parental termination used by the trial court. Id. at 277. The supreme court did not reach this issue, however, because it held that the evidence established parental conduct pursuant to subsection 161.001(1)(O) as a matter of law. Id.
The Texas Supreme Court has not reviewed a termination based on subsection 161.001(1)(O) since J.F.C. Among the courts of appeals, most have not looked to J.F.C. when reviewing a subsection 161.001(1)(O) termination, but have acted similarly by not analyzing whether the child at issue was removed under Chapter 262 for abuse or neglect. However, several decisions have treated a finding of abuse or neglect of the child to be a required element.
In re S.A.P., from the Waco Court of Appeals, specifically pointed out that "abuse or neglect of the child" was required under subsection 161.001(1)(O), and, because testimony showed that the child was not removed for abuse or neglect, but because of the risk caused by the parents' prior history, held that there was no evidence to support the jury's finding. 169 S.W.3d 685, 705-06 (Tex.App.-Waco 2005, no pet.). The Tyler Court of Appeals has consistently recognized "abuse or neglect of the child" as an element of subsection 161.001(1)(O). See In re K.H., No. 12-05-00077-CV, 2006 WL 3211299, at *5 (Tex. App.-Tyler Nov. 8, 2006, no pet.); In re M.B., No. 12-04-00350-CV, 2005 WL 3201071, at *4 (Tex.App.-Tyler Nov. 30, 2005, no pet.); In re A.C., No. 12-04-00264-CV, *515 2005 WL 2404108, at *4 (Tex. App.-Tyler Sept. 30, 2005, no pet.). Additionally, a decision from the Amarillo Court of Appeals actually designated "the child's removal from the parent was a result of abuse or neglect of the child" as the third element of subsection 161.001(1)(O) and went on to conclude that the child at issue was removed because of her parents' neglect. In re M.B., No. 07-04-0334-CV, 2004 WL 2867544, at *2 (Tex.App.-Amarillo Dec. 14, 2004, no pet.).
Because the supreme court did not expressly hold that "removal under Chapter 262 for abuse or neglect of the child" is not an element of subsection 161.001(1)(O), we must adhere to the unambiguous language of the statute. Thus, in our sufficiency review of the trial court's finding that Hurst engaged in conduct pursuant to subsection 161.001(1)(O), we must consider whether DFPS proved by clear and convincing evidence that A.A.A. was removed under Chapter 262 for Hurst's abuse or neglect.
In determining whether the evidence is sufficient to support the trial court's finding that A.A.A. was removed because of Hurst's abuse or neglect, and because "abuse" and "neglect" are not defined in subsection 161.001(1)(O), it is helpful to review how "abuse or neglect of the child" has been addressed as a prong of subsection 161.001(1)(O). In In re M.B., the court held that the Department's affidavit established that the child was removed as a result of neglect. 2004 WL 2867544, at *2. The affidavit stated that the Department had received a report from the hospital treating the child, which informed them that the parents could not be located and had not left any contact information. Id. As of the date of removal, the parents had not visited the child in the hospital in nearly one month. Id. In In re A.C., a Department affidavit stated that a report was initially received alleging neglectful supervision. 2005 WL 2404108, at *4. After investigating, the Department decided that there was "reason to believe" the allegations. Id. A Department specialist found that, after the allegation, the parents placed the children with a relative to avoid foster care. Id. After caring for the children for four months, the relative brought the children to the Department, because she could not care for them and was not receiving support from their parents. Id. The specialist believed emergency removal was necessary due to alleged drug use and lack of appropriate housing. The court held that this evidence established the parents' neglect. Id. In In re K.H., the court held that evidence that the "case was initiated because of domestic violence ... and physical neglect of both children" established that removal occurred due to parental neglect. 2006 WL 3211299, at *5. Removal based on neglect was also held to be established where a Department affidavit noted that the child tested positive for drugs at birth and the parents were "engaged in ongoing drug possession and use in violation of a previous service plan." In re M.B., 2005 WL 3201071, at *4. However, in In re S.A.P., the court held that the abuse or neglect prong was not satisfied because a Department caseworker specifically testified that the child was not removed for the abuse or neglect of the parents, but because of a risk caused by the parent's prior history. 169 S.W.3d at 705-06. We conclude that these opinions show that whether a child was removed for abuse or neglect should be determined on a case-by-case basis.
Here, DFPS argues that the fact that Hurst left A.A.A. in the shelter while she went to commit a crime is sufficient to establish neglect. We disagree. DFPS did not offer sufficient evidence of the circumstances surrounding this event to *516 establish neglect. Specifically, DFPS provided no evidence that Hurst knew or reasonably should have known that her child would not be taken care of when she left her at the shelter. Similarly, DFPS failed to present evidence with whom, and with what instructions, the child was left at the shelter. To the contrary, there is evidence that Hurst had provided emergency contact information with the shelter, even though this contact information ultimately proved useless.
Nevertheless, we conclude that the evidence is sufficient to support the trial court's finding that A.A.A. was removed for Hurst's neglect. DFPS did present evidence to the trial court that, once Hurst was released from police custody, she did not make any effort to find out A.A.A.'s location or condition or to leave a way to reach her with either DFPS or the shelter. Attached to DFPS's original petition for temporary managing conservatorship of A.A.A. is an affidavit, signed on January 26, 2006, stating that Hurst was released from county jail on January 25, 2006 at 5:55 p.m., but had not yet returned to the shelter or made any attempt to contact relatives, and her whereabouts were unknown at that time. Moreover, the affidavit states that A.A.A. "was placed into protective custody because her mother could not be located and there were no other [DFPS] approved alternate placement options available." On January 26, the trial court found that A.A.A. was initially removed from Hurst pursuant to Section 262.104, which allows for emergency removal without a court order. TEX. FAM.CODE. ANN. § 262.104 (Vernon Supp. 2007). The trial court also issued a temporary order naming DFPS as A.A.A.'s temporary sole managing conservator, finding, in part, that "there is a continuing danger to the physical health or safety of the child if returned to the parent." In viewing all the evidence in the light most favorable to the finding, we conclude that a reasonable trier of fact could have formed a firm belief or conviction that A.A.A. was removed under Chapter 262 for Hurst's neglect. Additionally, because the evidence surrounding Hurst's lack of effort to locate her child following her release from custody is undisputed, we hold that the evidence is factually sufficient to support the trial court's finding.
We overrule Hurst's fourth issue. Therefore, we need not address Hurst's first through third issues challenging the trial court's other subsection 161.001(1) findings, but we must also determine whether the evidence was sufficient to support the trial court's finding that termination was in A.A.A.'s best interest.

Best Interest of the Child
In her fifth issue, Hurst challenges the legal and factual sufficiency of the trial court's finding that termination was in A.A.A.'s best interest pursuant to subsection 161.001(2). TEX. FAM.CODE. ANN. § 161.001(2).
A strong presumption exists that a child's best interests are served by maintaining the parent-child relationship. In re L.M., 104 S.W.3d 642, 647 (Tex.App.-Houston [1st Dist.] 2003, no pet.). The same evidence of acts or omissions used to establish grounds for termination under subsection 161.001(1) may be probative in determining the best interests of the child. Id. Some of the factors that an appellate court may consider in ascertaining the best interest of a child include the list set forth in Holley v. Adams., 544 S.W.2d 367, 371-72 (Tex.1976). Those factors include the following:
(1) the desires of the child;
(2) the emotional and physical needs of the child now and in the future;

*517 (3) the emotional and physical danger to the child now and in the future;
(4) the parental abilities of the individuals seeking custody;
(5) the programs available to assist these individuals to promote the best interest of the child;
(6) the plans for the child by these individuals or by the agency seeking custody;
(7) the stability of the home or proposed placement;
(8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one; and
(9) any excuse for the acts or omissions of the parent.
Id.; see also Adams v. Tex. Dept. of Family & Protective Servs., 236 S.W.3d 271, 280-81 (Tex.App.-Houston [1st Dist.] 2007, no pet.). These factors are not exhaustive, and there is no requirement that DFPS prove all factors as a condition precedent to parental termination. In re C.H., 89 S.W.3d 17, 27 (Tex.2002). Termination of the parent-child relationship is not justified where the evidence shows merely that a parent's failure to provide a more desirable degree of care and support of the child is due solely to misfortune or the lack of intelligence or training, and not to indifference or malice. Clark v. Dearen, 715 S.W.2d 364, 367 (Tex.App.-Houston [1st Dist.] 1986, no writ).
We begin by considering the desires of the child and the suitability of any proposed placement. At the time of trial, A.A.A. was too young to express with whom she desired to live. Nevertheless, A.A.A.'s guardian ad litem noted in her report that, during the most recent visit between Hurst and A.A.A., there was limited interaction because A.A.A. does not know her mother. She recommended that A.A.A. remain in her current placement, because she has bonded with Hurst's relative and her children and appears to be thriving. Further, while the record does not expressly state that DFPS plans on placing A.A.A. with Hurst's relative, Hall testified that Hurst's relative has expressed an interest in adopting A.A.A.
We next examine A.A.A.'s emotional and physical considerations now and in the future. DFPS did not present any evidence showing how Hurst posed a physical or emotional danger to A.A.A. Both caseworkers testified that A.A.A. has no special needs. There is no evidence that Hurst had a drug or alcohol problem. Hurst also testified that there was no domestic violence problems between her and Alexander.
Nevertheless, the goal of establishing a stable, permanent home for a child is a compelling state interest. In re C.E.K., 214 S.W.3d 492, 498 (Tex.App.-Dallas 2006, no pet.). We recognize that Hurst testified that she is currently living and plans on staying with Alexander in a Lake Charles apartment, where she has day care arranged for A.A.A. She also explained that her name was on the apartment's lease, even when she was not living there, because she planned on returning to Louisiana. Alexander expressed that he is going to stay at the apartment and is ready to provide shelter and food for A.A.A.
However, despite Hurst's and Alexander's testimony that they are ready to provide for A.A.A., there is also evidence weighing against Hurst's ability to provide a stable, permanent home. Since A.A.A.'s removal, Hurst has lived at several locations around Houston and in Louisiana and has changed jobs several times. Her rationale for initially leaving Louisiana and moving with A.A.A. to the Houston shelter was she "wanted to do things on her own." *518 When asked why she moved back to Louisiana while A.A.A. remained in Texas, Hurst answered, "Because that's home. I was going home." She explained that, once back in Louisiana, she lived back and forth between Alexander and her sick mother, whom she assisted.
Hurst also testified that she worked continuously from February 2006 until the time of trial. She stated that she worked at McDonald's from February 2006 until June 2006. However, the guardian ad litem testified that, on June 1, 2006, Hurst told her that she had been working at McDonald's for only three weeks. Once back in Louisiana, Hurst testified that she babysat two children for seven months, making $300 every two weeks. At trial, Hurst expressed that she was currently working early evenings at a gas station making $7.25 an hour. Hurst's frequent moves and job changes weigh against her ability to provide a stable, permanent home for A.A.A.
Finally, we look at Hurst's acts and omissions that indicate that the parent-child relationship is improper, keeping in mind any excuses she has for her behavior. The events precipitating DFPS's taking custody of A.A.A. began with Hurst's arrest for shoplifting. Hurst admitted that shoplifting is wrong, but testified that this was the first time she had been arrested and claimed that she shoplifted cough medicine for A.A.A., who was sick. While Hurst offered several explanations for why she did not attend required parenting classes and claimed that she left several messages with Hall indicating that she was moving back to Louisiana, it is undisputed that she failed to complete the services outlined in her court-ordered family service plan. Furthermore, Hurst made at most six out of a possible 24 visits with A.A.A., and, after she returned to Louisiana in June 2006, she did not see A.A.A. again until January 2007. Even though she could have visited A.A.A. more often once she was in her relative's care, Hurst claimed that she was told she could only visit at the DFPS office. However, when asked why she did not make the remaining 18 visits, which would have been at the DFPS office, she replied, "I don't know." Hurst stated that the primary reason she went six months without visiting A.A.A. was her lack of transportation, but noted that she called A.A.A. everyday. Hall agreed that Hurst had complained about transportation problems during most of their conversations. Finally, Hurst testified that she brought A.A.A. clothing and shoes during their visits, but admitted that she has provided no financial assistance for her daughter's maintenance.
In light of all the evidence, the trial court could have formed a firm belief or conviction that termination of Hurst's parental rights was in A.A.A.'s best interest. Accordingly, we hold that the evidence is legally and factually sufficient to support the trial court's finding that termination of Hurst's parental rights was in the best interest of A.A.A.
We overrule Hurst's fifth issue.

Sole Managing Conservator
Having affirmed the termination of Hurst's parental rights, we now turn to Hurst's sixth issue, which asks whether the appointment of DFPS as sole managing conservator should be reversed. However, because Hurst asks us to consider this issue only if we conclude that the trial court erred in terminating her parental rights, we need not address it.

Conclusion
We affirm the trial court's judgment.
NOTES
[1] Chapter 262 is entitled "Procedures in Suit by Governmental Entity to Protect Health and Safety of Child." TEX. FAM.CODE ANN. § 262 (Vernon Supp.2007). Subchapter B of Chapter 262 provides the reasons and procedures necessary for a governmental entity to take possession of a child. See generally id. §§ 262.101-.114 (Vernon 2002 & Supp.2007).
[2] On rehearing, DFPS asserts that Hurst's statement of points regarding subsection 161.001(1)(O) is insufficient to preserve her complaint that the evidence is legally and factually insufficient to support the trial court's finding that A.A.A. was removed for abuse or neglect. See TEX. FAM.CODE ANN. § 263.405(b), (i) (Vernon Supp.2007) (requiring a party to file with the trial court a statement of the point or points he wishes to appeal before an appellate court may consider the issue). Hurst's points regarding subsection 161.001(1)(O) are as follows:

19. The evidence is legally insufficient to support a finding that the Respondent did not participate in court ordered services under the Texas Family code, section § 161.001(O).
20. The evidence is factually insufficient to support a finding that the Respondent did not participate in court ordered services under the Texas Family code, section § 161.001(O).
While these points do not expressly challenge the sufficiency of the evidence supporting that A.A.A. was removed for abuse or neglect, they were sufficient to put the trial court on notice that Hurst was challenging the legal and factual sufficiency of its termination of her parental rights pursuant to subsection 161.001(1)(O). Accordingly, we consider Hurst's issue regarding subsection 161.001(1)(O).