Affirmed and Memorandum Opinion filed May 7, 2009








Affirmed and Memorandum Opinion filed May 7, 2009.

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-08-00754-CV

____________

 

IN THE INTEREST OF J.S.G. AND
J.A.G., CHILDREN

 



 

On Appeal from the 314th
District Court

Harris County, Texas

Trial Court Cause No. 2007-06585J

 



 

M E M O R A N D U M    O P I N I O N

In this accelerated appeal, appellant, Ada Guerrero,
challenges the trial court=s decree terminating her parental rights
with regard to her minor children, J.S.G. and J.A.G.  In four issues, appellant
contends that the evidence is legally and factually insufficient to: (1)
support the grounds for termination under subsections 161.001(1)(D) and (O);
(2) support the trial court=s best interest finding in favor of
termination; and (3) rebut the parental presumption under section 153.131 of
the Texas Family Code. We affirm.








I.  BACKGROUND

Appellant was the mother of three children: C.G., J.S.G.,
and J.A.G.  On June 18, 2007, C.G. died while in appellant=s care.[1] 
Prior to C.G.=s death, appellee, the Texas Department of Family
& Protective Services (Athe Department@), had some level
of involvement with appellant and her three children.  Lee Welborn, a
caseworker with Child Advocates, Incorporated, testified that he visited appellant=s home twice in
2006.  Welborn had a number of concerns regarding the children=s living
environment.  There were holes in the walls and floors of the home, and an
upstairs room had an unsecured floor, which, according to Welborn, Asagged and felt
like you [would] fall through.@  Welborn further testified that there
were hazardous chemicals easily accessible to the children, including brake
fluid and household cleaners.  In the front yard, there was an old water well
that posed a serious hazard to the children.  Additionally, Welborn observed
exposed electrical cords running across the floor inside the home.  Apparently,
because half of the home was without electricity, electrical cords were
extended from the portion of the home with electricity to the part without to
provide electric power to that  portion of the house.  Although the Department
had distinct concerns with respect to the structural integrity of the home, the
children were not removed at that time. 








On June 18, 2007, the Department was notified that C.G. had
died in appellant=s care and speculated that his death was
caused, at least in part, by appellant=s medical
neglect.  After C.G.=s death, the Department initiated an
investigation focused on two concerns that potentially impacted the physical
and emotional well-being of J.S.G. and J.A.G.: (1) the condition of appellant=s home; and (2)
appellant=s role in C.G.=s death.  Roy
Willeford, a special investigator for the Department, testified that he visited
appellant=s home two days after C.G.=s death.  Although
Willeford noticed that J.S.G. and J.A.G. were Awell-nourished,
happy, clean, and dressed appropriately,@ he also observed
a number of hazardous conditions in the home.  Willeford testified that the
home was Aextremely dirty,@ and the carpet
was filled with Acrustations.@  The condition of
the carpet was of particular concern because J.A.G., one year old at the time,
was still crawling.  Willeford was also concerned with an exposed gas water
heater in the kitchen that had no precautionary barriers to prevent injury to a
child.  Additionally, the stairway had no handrails, and the stove was in a
deplorable condition.  Willeford further testified that there was a
considerable amount of rotten wood immediately outside of the house.  

Shortly after his first visit to appellant=s home, Willeford
received a second referral alleging that appellant and other occupants were
using illegal drugs in the home.  The referral alleged that appellant=s teenage nephew,
an occupant of the home, was smoking crack on the front porch and that
appellant and her sister, Maryann Guerrero Gonzalez, another occupant of the
home, used illegal drugs.  Responding to this referral, Willeford visited the
home again and made contact with Gonzalez.  Gonzalez showed Willeford some of
the repairs that had been made since his first visit; however, Willeford
noticed still other safety concerns, including the exposed gas water heater. 
When Willeford questioned Gonzalez about the allegations made in the referral,
she denied using illegal drugs.  She did, however, acknowledge that her teenage
son abused illegal drugs, but indicated that he no longer lived in the home.  Gonzalez told Willeford that her
teenage son was living with his grandmother, but was unable to provide the
physical address.  Gonzalez further indicated that her son occasionally visited
her at her house, but he did not stay overnight.  The Department
also learned that Gonzalez=s son was on probation for indecency with
a child.[2] 
  








To disprove the allegations of drug use made in the
referral, appellant and Gonzalez agreed to submit to drug tests.  Accordingly, the
Department scheduled appointments for drug testing for both appellant and
Gonzalez; however, they failed to appear for the scheduled testing. 
Additionally, the Department=s investigation revealed that appellant medically
neglected C.G. in the last years of his life.  Dr. Ana Lopez, the assistant
medical examiner who performed C.G.=s autopsy,
testified that C.G. had been medically neglected since 2003.  Specifically, Dr.
Lopez testified that (1) C.G. had multiple decubitus ulcers on his body that
were not properly treated; (2) despite his medical condition, his weight was
extremely low; (3) he continually missed doctor=s appointments and
had not seen a doctor since 2003; (4) he was improperly fed; and (5) his
colostomy sites had not been properly treated.  Moreover, appellant was unable
to produce or locate C.G.=s medical or pharmacy records from 2003
forward.  Dr. Lopez opined that C.G. had been medically neglected in the last
years of his life and that appellant had hastened his death.

On July 12, 2007, J.S.G. and J.A.G. were removed from
appellant and placed in the care of their great aunt, Grace Gonzalez.  The two
children have remained in relative placement ever since.  On August 29, 2007,
appellant and the Department entered into a family service plan to reunify
appellant with her two children.  The service plan identified a number of
concerns: (1) safety and sanitation issues regarding appellant=s home; (2)
another resident in the home charged or convicted of a sexual offense against a
child; (3) appellant=s medical neglect of C.G.; (4) appellant=s criminal
history;[3]
and (5) appellant=s failure to appear for previous drug
screening.  The family service plan also required, among other things, that
appellant:

(a)     submit to a
psychological examination, 

(b)     attend and
complete drug and alcohol treatment, 








(c)     attend
individual grief and loss counseling, 

(d)     attend and
complete parenting classes, and 

(e)     find and
maintain employment.

On September 11, 2007, the trial court signed an order
reiterating the family service plan=s requirements and
ordered appellant to complete the requirements outlined in the plan. Appellant
began to perform the requirements identified in the plan, but she failed to
complete all of the them.  The Department proceeded with termination
proceedings, and after a trial to the bench, the trial court found by clear and
convincing evidence that: (1) appellant knowingly placed or knowingly allowed
her children to remain in conditions or surroundings that endangered their
physical or emotional well-being; (2) appellant failed to comply with the
provisions of a court order that specifically established the actions necessary
to obtain the return of the children who had been in the permanent or temporary
managing conservatorship of the Department for not less than nine months as a
result of the children=s removal under chapter 262 for abuse or
neglect of the children; and (3) termination would be in the best interest of
the children.  The trial court entered a decree terminating appellant=s parental rights.[4]

On appeal, appellant challenges the trial court=s decree of
termination, contending that the evidence is legally and factually insufficient
to support the trial court=s finding on each predicate ground for
termination and its best interest finding in favor of termination.  Appellant
further contends that the evidence is legally and factually insufficient to
rebut the parental presumption under section 153.131 of the Family Code.   








II.  STANDARDS OF REVIEW

The natural relationship between parents and their children
is one of constitutional dimension.  In re J.W.T., 872 S.W.2d 189, 194B95 (Tex. 1994); In
re U.P., 105 S.W.3d 222, 229 (Tex. App.CHouston [14th
Dist.] 2003, pet. denied).  A parent=s right to Athe companionship,
care, custody and management@ of her children is a constitutional
interest Afar more precious than any property right.@  Stanley v.
Illinois, 405 U.S. 645, 651 (1972);   Holick v. Smith, 685 S.W.2d
18, 20 (Tex. 1985).  Therefore, termination proceedings should be strictly
scrutinized.  Holick, 685 S.W.2d at 20B21; In re U.P.,
105 S.W.3d at 229.  However,
parental rights are not absolute, and it is vital that the emotional and
physical interests of the children not be sacrificed at the expense of
preserving those rights.  In re C.H., 89 S.W.3d 17, 26 (Tex. 2002). 

To
terminate a parent-child relationship, a trial court must find by clear and
convincing evidence that (1) the parent committed one or more acts specifically
identified in the Texas Family Code as grounds for termination, and (2)
termination is in the best interest of the child.  See Tex. Fam. Code ' 161.001; Richardson v. Green,
677 S.W.2d 497, 499 (Tex. 1984).  Clear and convincing evidence is the degree
of proof that will produce in the mind of the trier of fact a firm belief or
conviction as to the truth of the allegations sought to be proved.  Tex. Fam.
Code ' 101.007.  There is a strong
presumption that the best interest of the child is served by preserving the
parent-child relationship.  Wiley v. Spratlan, 543 S.W.2d 349, 352 (Tex.
1976).  The burden of proof is upon the party seeking to terminate the
parent-child relationship.  See In re J.F.C., 96 S.W.3d 256, 265B66 (Tex. 2002).  If the trial court
terminated the parent-child relationship on multiple bases under section
161.001(1), we may affirm on any one ground, as only one predicate violation
under section 161.001(1) is necessary to a termination judgment.  In re
S.A.P., 169 S.W.3d 685, 695 (Tex. App.CWaco 2005, no pet.); In re S.F.,
32 S.W.3d 318, 320 (Tex. App.CSan Antonio 2000, no pet.).








            There is a
distinction between legal and factual sufficiency with respect to how the evidence
is reviewed when the burden of proof is clear and convincing evidence.  In
re J.F.C., 96 S.W.3d at 266.  In a legal sufficiency review, we look at all
the evidence in the light most favorable to the finding to determine whether a
reasonable trier of fact could have formed a firm belief or conviction that its
finding was true.  Id.; In re J.I.T.P., 99 S.W.3d 841, 843B44 (Tex. App.CHouston [14th Dist.] 2003, no pet.). 
To give appropriate deference to the factfinder=s conclusions, we must assume that
the factfinder resolved disputed facts in favor of its finding if a reasonable
factfinder could do so.  In re J.F.C., 96 S.W.3d at 266.  We disregard
all evidence that a reasonable factfinder could have disbelieved or found to
have been incredible.  Id.; In re J.I.T.P., 99 S.W.3d at 844. 
If, after conducting our review of the record evidence, we determine that no
reasonable factfinder could form a firm belief or conviction that the matter
that must be proven is true, then the evidence is legally insufficient.  In
re J.F.C., 96 S.W.3d at 266. 

            In a factual
sufficiency review, we ask whether the evidence is such that a factfinder could
reasonably form a firm belief or conviction about the truth of the State=s allegations.  In re C.H., 89
S.W.3d at 25.   A court of appeals should consider whether disputed evidence is
such that a reasonable factfinder could not have credited in favor of the
finding.  In re J.F.C., 96 S.W.3d at 266.  If, in the light of the
entire record, the disputed evidence that a reasonable factfinder could not
have credited in favor of the finding is so significant that a factfinder could
not reasonably have formed a firm belief or conviction about the truth of the
State=s allegations, then the evidence is
factually insufficient.  Id.  We must give due deference to the jury=s factfindings, and we should not
supplant the jury=s judgment with our own.  In re H.R.M., 209 S.W.3d
105, 108 (Tex. 2006).          








In the present case, the trial court terminated appellant=s parental rights
because there was clear and convincing evidence that she: (1) knowingly placed
or allowed the children to remain in conditions or surroundings which
endangered their physical or emotional well-being; and (2) failed to comply
with the provisions of a court order that specifically established the actions
necessary to obtain the return of the children who had been in the permanent or
temporary managing conservatorship of the Department for not less than nine
months as a result of the children=s removal under
chapter 262 of the Family Code for the abuse or neglect of the children.  See
Tex. Fam. Code '' 161.001(1)(D), (O).

III.  SECTION 161.001(1)(O): NONCOMPLIANCE WITH COURT ORDER

In her second issue, appellant contends that the evidence
is legally and factually insufficient to support the trial court=s termination
finding under subsection 161.001(1)(O).  To terminate parental rights based
upon subsection 161.001(1)(O), the trial court must find by clear and
convincing evidence that the parent failed to comply with the provisions of a
court order specifically establishing the actions necessary for the parent to
obtain the return of the child who had been in the permanent or temporary
managing conservatorship of the Department for not less than nine months as a
result of the child=s removal from the parent under Family
Code chapter 262 for the abuse or neglect of the child.  See id. ' 161.001(1)(O). 

Appellant does not dispute that the children were in the
Department=s custody for at least nine months or that she did not
comply with the trial court=s order requiring her to complete the
requirements identified in the family service plan.  Rather, appellant argues
that the Department did not meet its burden of proof as to the element under
subsection 161.001(1)(O) requiring the children subject of the suit be removed
as a result of abuse or neglect.  Specifically, appellant contends that the
Department failed to meet its burden under subsection (O) because J.S.G. and
J.A.G. were not removed for abuse or neglect specific to them, but were removed
for the alleged neglect of C.G., a child not subject of the suit.








The Department disputes appellant=s contention that
subsection 161.001(1)(O) requires the children subject of the suit be removed
as a result of abuse or neglect.  Citing to In re J.F.C., the Department
argues that subsection (O) does not require a showing that J.S.G. and J.A.G
were removed due to appellant=s abuse or neglect.  96 S.W.3d 256.  In In re S.N.,
this Court rejected an argument identical to the Department=s contention in
the instant case and concluded that removal as a result of abuse or neglect of
the child is an element under subsection 161.001(1)(O).   See In re S.N.,
C S.W.3d C, C, No.
14-07-00161-CV, 2009 WL 704724, at *5 (Tex. App.CHouston [14th
Dist.] Mar. 5, 2009, pet. filed)  (concluding that removal of the child as a
result of Aabuse or neglect@ is a required
element of subsection 161.001(1)(O)).  

In S.N., this Court considered whether subsection
161.001(1)(O) required the State to prove by clear and convincing evidence that
the child subject of the suit was removed under chapter 262 as a result of
abuse or neglect.  Id. at *4B5.  The S.N.
court first considered the Texas Supreme Court=s decision in J.F.C.
and recognized that it did not address whether the child at issue was
removed for abuse or neglect or if a showing of such fact was required under
subsection (O).  Id.  Because the J.F.C. court did not address
the child=s removal as a result of abuse or neglect and the
court did not expressly conclude that removal under chapter 262 for abuse or
neglect is not an element of subsection (O), the S.N.
court concluded that it was required to adhere to the unambiguous language of
subsection 161.001(1)(O).  Id.  After reviewing the plain and
unambiguous language of subsection (O), this Court held that removal of the
child as a result of A>abuse and neglect= is a required
element of [sub]section 161.001(1)(O).@  Id.   








Moreover, many of our sister courts have likewise held that
removal of the child as a result of abuse or neglect is an element of
subsection 161.001(1)(O).  See In re A.A.A., 265 S.W.3d 507, 515 (Tex.
App.CHouston [1st
Dist.] 2008, pet. denied) (holding that subsection 161.001(1)(O) requires a
showing that the child subject of the suit was removed under chapter 262 for
the parent=s abuse or neglect); In re K.H., No.
12-05-00077-CV, 2006 WL 3211299, at *5 (Tex. App.CTyler Nov. 8,
2006, no pet.) (mem. op.) (recognizing Aabuse or neglect
of the child@ as an element of subsection 161.001(1)(O)); In re
S.A.P., 169 S.W.3d 685, 705B06 (Tex. App.CWaco 2005, no
pet.). (pointing out that Aabuse or neglect of the child@ is required under
subsection 161.001(1)(O)); In re M.B., No. 12-04-00350-CV, 2005 WL
3201071, at *4 (Tex. App.CTyler Nov. 30, 2005, no pet.) (mem. op.)
(concluding that evidence established that child subject of suit was removed as
a result of parent=s neglect pursuant to subsection
161.001(1)(O)); In re A.C., No. 12-04-00264-CV, 2005 WL 2404108, at *4
(Tex. App.CTyler Sept. 30, 2005, no pet.) (mem. op.) (recognizing
Aabuse or neglect
of child@ as an element of
subsection 161.001(1)(O) and concluding that evidence sufficiently established
that the children subject of the suit were removed as a result of parent=s neglect); In
re M.B., 07-04-00334-CV, 2004 WL 2867544, at *2 (Tex. App.CAmarillo Dec. 14,
2004, no pet.) (mem. op.) (identifying Athe child=s removal from the
parent as a result of abuse or neglect of the child@ as a required
element of subsection 161.001(1)(O)). 








Following our decision in S.N., we reject the
Department=s argument and conclude that Aremoval as a
result of abuse or neglect@ is an element of subsection
161.001(1)(O).[5] 
See In re S.N., 2009 WL 704724, at *5; Tex. Fam. Code ' 161.001(1)(O);
see also In re A.A.A., 265 S.W.3d at 515; In re K.H., 2006 WL
3211299, at *5; In re S.A.P., 169 S.W.3d at 705B06; In re M.B.,
2005 WL 3201071, at *4; In re A.C., 2005 WL 2404108, at *4; In re
M.B., 2004 WL 2867544, at *2.  We now must determine whether the Department
proved by clear and convincing evidence that J.S.G. and J.A.G. were removed
under chapter 262 as a result of abuse or neglect.  See In re A.A.A.,
265 S.W.3d at 515.  Although appellant is correct that the Department
considered appellant=s medial neglect of C.G. in requesting
that J.S.G. and J.A.G. be removed, the record also reflects that appellant=s neglect of C.G.
was only one of several reasons for removing J.S.G. and J.A.G. 

In support of its removal request, the Department submitted
the affidavit of Willeford to the trial court.  In his affidavit, Willeford
raised several reasons for the Department=s removal request,
including appellant=s role in C.G.=s death and the
children=s immediate living
environment.  With respect to the children=s living
environment, Willeford identified the following concerns: (1) the structural
integrity of the home; (2) an occupant convicted of a sexual offense against an
11-year-old child; (3) drug use by appellant and other occupants; and (4)
appellant=s criminal history and outstanding arrest warrants. 
Based on these concerns and the Aneglectful
supervision@ of the children, Willeford concluded that Athere [was] an
immediate danger to the physical health or safety of [J.S.G.] and [J.A.G] in
[the] home and it would be in their best interest to be placed in the
protective custody of the Department.@  Willeford=s affidavit
reflects that the Department sought to remove the children, in part, based upon
the children=s immediate living environment and appellant=s neglectful
supervision.  See In re M.B., 2005 WL 3201071, at *4 (caseworker=s affidavit
indicating that the child was removed for parent=s use of illegal
drugs was sufficient to establish that the child was removed as a result of
parent=s neglect).    








Additionally, the trial court=s temporary order
naming the Department as the temporary managing conservator found that there
was sufficient evidence of (1) Aa danger to the physical health or safety
of the children which was caused by an act or failure to act [by appellant] and
for the children to remain in the home [was] contrary to the welfare of the
children,@ (2) Aa substantial risk of a continuing danger
if the children [were] returned home,@ and (3) Aa continuing
danger to the physical health or safety of the children and for the children to
remain in the home [was] contrary to the welfare of the children.@  See In re
A.A.A., 265 S.W.3d at 516 (considering the trial court=s temporary orders
as evidence of neglect of the child).

The evidence establishes that J.S.G. and J.A.G. were
removed as a result of neglect specific to them by appellant.  Because
appellant does not dispute her failure to comply with the court order requiring
completion of the family service plan, the evidence is legally and factually
sufficient to support the trial court=s finding of
termination under subsection 161.001(1)(O).  We overrule appellant=s second issue. 

IV.  BEST INTEREST OF THE CHILDREN

In her
third issue, appellant contends that the evidence is legally and factually
insufficient to support the trial court=s best interest finding in favor of
termination.  See Tex. Fam. Code ' 161.001(2).  A statutory act or
omission under section 161.001(1) must be coupled with a finding that
termination of the parent-child relationship is in the best interest of the
child.  In re C.M.C., 273 S.W.3d 862, 876 (Tex. App.CHouston [14th Dist.] 2008, no pet.). 
It is the Department=s burden to prove by clear and convincing evidence that
termination is in the child=s best interest.  In re S.M.L., 171 S.W.3d 472, 480
(Tex. App.CHouston [14th Dist.] 2005, no pet.); In re U.P., 105 S.W.3d at
230.








We
consider the following factors in determining the best interest of the child: (1)
the child=s desires; (2) the child=s emotional and physical needs now and in the future; (3) the
emotional and physical danger to the child now and in the future; (4) the parental
abilities of the individuals seeking custody; (5) the programs available to
assist these individuals to promote the best interest of the child; (6) the
plans for the child by these individuals or by the agency seeking custody; (7)
the stability of the home or proposed placement; (8) the acts or omissions of
the parent which may indicate that the existing parent-child relationship is
not proper; and (9) any excuse for the acts or omissions of the parent.  Holley
v. Adams, 544 S.W.2d 367, 371B72 (Tex. 1976); In re C.M.C.,
273 S.W.3d at 876.  ABest interest@ neither requires proof of any unique set of factors, nor
limits proof to any specific factors.  In re S.M.L., 171 S.W.3d at 480. 
The same evidence of acts or omissions used to establish a ground for
termination under section 161.001(1) may be probative in determining the best
interest of the child.  In re A.A.A., 265 S.W.3d at 516. 

A.  Children=s Desires

With
respect to the desires of the children, two caseworkers testified that J.S.G.
expressed a desire to return and live with appellant.  The record does not
reflect the desire of J.A.G., who was only two years old at the time.  This
factor weighs in favor of appellant with respect to J.S.G.  

B.  Present and
Future Physical and Emotional Needs of the Children

Although
J.S.G. and J.A.G. have no special needs, appellant=s medical neglect of C.G. potentially
impacts the physical and emotional needs of the two children.  See In re S.G.S, 130 S.W.3d 223,
238 (Tex. App.CBeaumont 2004, no pet.)  (reasoning that the jury
could also infer from the actual neglect of one child that the physical and
emotional well-being of the other children was also jeopardized).  Dr. Lopez opined that C.G. had been
medically neglected in the last years of his life and that appellant=s neglect had
hastened his death.  The trier of fact could infer from appellant=s neglect of C.G.
that the physical and emotional needs of J.S.G. and J.A.G. were jeopardized.  See
id.  Furthermore,
there is credible evidence that appellant=s home would subject the children to
an unsafe living environment.  This evidence support=s the trial court=s best interest finding.

C.  Present and
Future Emotional and Physical Danger to the Children








Although
there is evidence that the children were occasionally Awell-nourished,
happy, clean, and dressed appropriately,@ the record also
reflects a substantial amount of contrary evidence regarding the children=s emotional and
physical well-being.  First, there is evidence that the structural integrity of
the home endangered the physical and emotional well-being of the children. 
Welborn testified that an upstairs room had an unsecured floor, which, Asagged and felt
like you [would] fall through.@  Welborn further testified that there
were hazardous chemicals easily accessible to the children, including brake
fluid and household cleaners.  In the front yard, there was an old water well
posing a serious hazard to the children.  Welborn observed exposed electrical
cords running across the floor inside the home, also a serious hazard to the
children. 

Furthermore, Willeford testified that the home was Aextremely dirty,@ and the carpet
was filled with Acrustations.@  The condition of
the carpet was of particular concern because J.A.G., one year old at the time,
was still crawling.  Willeford was also concerned with an exposed gas water
heater in the kitchen that had no precautionary barriers to prevent injury to a
child.  Additionally, the stairway had no handrails, and the stove was in a
deplorable condition.  Willeford further testified that there was a
considerable amount of rotten wood immediately outside of the house.  Although
appellant had made some repairs after his first visit, Willeford later observed
continuing hazardous in the home, including the exposed gas water heater. 
Appellant=s recent past acts of exposing the children to a
hazardous living environment is relevant to determining her future conduct.  See Whitworth v. Whitworth, 222 S.W.3d 616, 623 (Tex. App.CHouston [1st Dist.] 2007, no pet.) (reasoning that Aan adult=s future conduct
may be somewhat determined by recent past conduct@); see also In
re A.C.B., 198 S.W.3d 294, 299 (Tex. App.CAmarillo 2006, no
pet.) (recognizing that while the parent had made some repairs to home, such
evidence did not controvert the evidence that she exposed the children to
severe conditions which endangered the child=s physical
well-being).








There is also evidence of appellant=s and other
occupants= use of illegal drugs and engaging in criminal
activity.  See In re U.P., 105 S.W.3d at 231 (reasoning that parent=s prior drug use
and criminal history weigh in favor of termination with respect to the Apresent and future
emotional and physical danger to the child@).  Willeford had
received a referral alleging that appellant and other occupants were using
illegal drugs in the home.  Although appellant and her sister denied abusing
drugs, they refused to submit to a drug test to disprove these allegations. 
Furthermore, appellant tested positive for propoxyphene.[6]  
Additionally, appellant=s nephew, another occupant of the home,
had been convicted of a sexual offense against an 11 year old child. 

Finally, there is compelling evidence of appellant=s medical neglect
of C.G.    See In re S.G.S, 130 S.W.3d at 238 (reasoning that the jury
could infer from the actual neglect of one child that the physical and
emotional well-being of the other children were also jeopardized).  Dr. Lopez
testified that C.G. was medically neglected since 2003.  Specifically, Dr.
Lopez testified that C.G. had multiple decubitus ulcers on his body and
colostomy sites that were not properly treated.  Additionally, despite his
medical condition, Dr. Lopez opined that C.G.=s weight was
extremely low.  He was 15 years old and weighed 36 pounds.  Dr. Lopez further
testified that C.G. should have been fed with either a AG-tube@ or maintained a
strict liquid diet; however, the autopsy revealed a piece of solid food affixed
to the top of his mouth.  Dr. Lopez testified that appellant also medically
neglected C.G. by continually missing doctor=s appointments. 
At the very least, C.G. was required to see a doctor every six months, but
apparently had not seen a doctor since 2003.  Moreover,  appellant was unable
to produce or locate C.G.= s medical or pharmacy records from 2003
forward.  Dr. Lopez opined that C.G. had been medically neglected in the last
years of his life and that appellant hastened his death.  The trier of fact
could infer from appellant=s neglect of C.G. that the physical and
emotional well-being of J.S.G. and J.A.G. were jeopardized.  See id.  Accordingly,
this factor weighs in favor of the trial court=s best interest
finding.








D.  Parental
abilities

 Appellant=s medical neglect of C.G. is an
indication of her parenting abilities, or lack thereof.  Although disputed by
appellant, there is evidence that appellant neglected C.G.  Furthermore,
appellant has neither provided a safe home for the children nor maintained
stable employment.  This factor weighs in favor of the trial court=s finding.  

E.  Available
Assistance Programs

The only
evidence concerning available assistance programs are those services outlined
in the family service plan.  While appellant completed the psychological
examination, the Department presented evidence that appellant failed to complete her
drug and alcohol treatment, attend individual counseling, complete parenting
classes, and maintain stable employment.[7] 
Latasha Johnson, a caseworker for the Department, also testified that appellant
was uncooperative and refused to allow her to visit the home during the
investigation.  See
In re J.I.T.P., 99
S.W.3d at 847 (considering parent=s uncooperativeness and failure to
complete counseling services in determining best interest of child).  Accordingly, this
factor weighs in favor of the trial court=s best interest
finding.

F.  Plans for the
Children

Appellant
has not outlined permanent plans for the children other than regaining
custody.  On the other hand, the Department recommended that the children
remain permanently in relative placement with Grace Gonzalez.  Johnson
testified that Grace Gonzalez expressed a desire to keep the children and that
Gonzalez=s home met the children=s physical and emotional needs and
would continue to do so in the future.    See id. at 847B48.  This factor weighs in favor of the trial court=s best interest finding.  








G.  Stability of
Home or Proposed Placement

As
discussed at length above, appellant has not shown that she is able to provide
a safe living environment for the children.  Evidence of the hazardous
condition of her current home and the criminal activity of appellant and other
occupants weigh in favor of the trial court=s finding.    See id. at 847 (reasoning that parent=s failure to provide a safe physical
home environment weighs in favor of termination).  In contrast, the Department
presented evidence that Grace Gonzalez=s home met the children=s needs and would continue to do so
in the future. 

H.  Acts or
Omissions of the Parent

Appellant=s acts and omissions indicate that
the existing parent-child relationship is not proper.  Appellant failed to
complete the court-ordered services to obtain the return of her children.  The
evidence reflects that appellant used illegal drugs, medically neglect her
first child and hastened his death, exposed the children to hazardous
conditions in the home, and allowed the children to co-habitat with an
individual convicted of a sexual crime against a child.  We find this evidence
to support the trial court=s best interest finding.  

I.  Any Excuse for
the Acts or Omissions of the Parent

Appellant
claims that she properly treated C.G., provided a stable home for the children,
and did not use illegal drugs.  However, the evidence shows that appellant
tested positive for prescription drugs for which she had no prescription,
medically neglected C.G., had numerous outstanding warrants, and exposed the
children to a physically-hazardous home environment.  See Smith v. McLin, 632 S.W.2d 390,
392 (Tex. App.CAustin 1982, writ ref=d n.r.e.)
(reasoning that the trial court is entitled to accept or reject the truth or
accuracy of appellant=s testimony as to her past actions and
future intentions).    








After weighing the evidence as it relates to the Holley
factors, we conclude there is legally and factually sufficient clear and
convincing evidence to support the trial court=s best interest
finding in favor of termination.  Therefore, we overrule appellant=s third issue.  Having overruled issues two and three
with regard to the trial court=s findings under subsection 161.001(1)(O) and it best
interest finding, we need not address appellant=s first issue challenging the
termination findings under subsection 161.001(1)(D).  See In re C.M.C.,
273 S.W.3d at 878.

V. 
PARENTAL PRESUMPTION

In her
fourth issue, appellant contends that the evidence is legally and factually
insufficient to rebut the parental presumption under section 153.131.  The
parental presumption provides:

. . .
unless the court finds that appointment of the parent or parents would not be
in the best interest of the child because the appointment would significantly
impair the child=s physical health or emotional development, a parent
shall be appointed sole managing conservator or both parents shall be appointed
as joint managing conservators of the child.  

 








Tex. Fam. Code ' 153.131(a).  A challenge to a trial
court=s finding under section 153.131(a) is
an issue of conservatorship.  See id.  The quantum of proof required to
support a termination decision differs from the level necessary to support a
conservatorship appointment.  In re J.A.J., 243 S.W.3d 611, 616 (Tex.
2007).  Termination findings must be supported by clear and convincing
evidence, while Aa finding that appointment of a parent as managing
conservator would significantly impair the child=s physical health or emotional
development is governed by a preponderance-of-the-evidence standard.@  Id.; Lewelling v.
Lewelling, 796 S.W.2d 164, 167 (Tex. 1990).  These differing proof
standards, in turn, affect the method of appellate review, which is less
stringent for conservatorship findings than for those regarding termination.  In
re J.A.J., 243 S.W.3d at 616. Unlike termination findings, conservatorship
determinations are subject to review only for abuse of discretion, and may be
reversed only if the decision is arbitrary and unreasonable.  Id.; Gillespie
v. Gillespie, 644 S.W.2d 449, 451 (Tex. 1982).  We must Aindulge every legal presumption in
favor of the judgment@ and view the evidence presented to the district court Ain the light most favorable to@ its actions.  Powell v. Swanson,
893 S.W.2d 161, 163 (Tex. App.CHouston [1st Dist.] 1995, no writ).  Provided that there is
some evidence Aof a substantive and probative character@ supporting the decision reached by
the district court, then the district court did not abuse its discretion.  Id.;
see also Doyle v. Doyle, 955 S.W.2d 478, 479 (Tex. App.CAustin 1997, no pet.) (explaining
that under an abuse of discretion standard, factual and legal sufficiency are
not independent grounds of error, Abut are relevant factors in assessing
whether the trial court abused its discretion@). 

The
presumption that the best interest of the child is served by awarding custody
to the natural parent is deeply embedded in Texas law.  See In re V.L.K.,
24 S.W.3d 338, 341 (Tex. 2000); Lewelling, 796 S.W.2d at 166.  The
burden of proof is upon the non-parent, and there must be evidence to support
the logical inference that some specific, identifiable behavior or conduct of
the parent will probably cause harm.  Lewelling, 796 S.W.2d at 167; In
re C.A.M.M., 243 S.W.3d 211, 215 (Tex. App.CHouston [14th Dist.] 2007, pet.
denied);  Whitworth, 222 S.W.3d at 623.  Acts or omissions that
constitute significant impairment include, but are not limited to, physical
abuse, severe neglect, abandonment, drug and alcohol abuse, or immoral behavior
on the part of the parent.  See In re De La Pena, 999 S.W.2d 521, 528
(Tex. App.CEl Paso 1999, no pet.).   








Here,
appellant contends that the Department failed to prove by a preponderance of
the evidence that appointing appellant as managing conservator would
significantly impair the children physically or emotionally.  To the contrary,
the
record is replete with evidence that appointing appellant as managing
conservator would significantly impair the children=s physical or
emotional development.  There is evidence that appellant medically neglected
her oldest child, thereby hastening his death.   See Whitworth, 222
S.W.3d at 623 (reasoning that Aan adult=s future conduct
may be somewhat determined by recent past conduct@).  Appellant
tested positive for prescription drugs, and there was evidence that she and
other occupants of the home used illegal drugs.  Appellant was unable to
provide a suitable living environment for the children and allowed the children
to reside with an individual who had been placed on probation for a sexual
offense against an 11-year-old child.  Appellant was also unable to maintain
stable employment.

An abuse of discretion does not occur so long as some
evidence of substantive and probative character exists to support the trial
court=s parental
presumption finding.  Id.  There is sufficient evidence to support the
trial court=s finding that appointing appellant as managing
conservator would significantly impair the children=s physical health
or emotional development.  We therefore overrule appellant=s fourth issue.  

Having concluded that the evidence is sufficient to support
the trial court=s termination findings under section
161.001(1) and to rebut the parental presumption under section 153.131, we
affirm the trial court=s decree terminating appellant=s parental rights
to J.S.G. and J.A.G.

 

 

 

 

 

/s/      Adele Hedges

Chief Justice

 

 

 

 

Judgment rendered
and Memorandum Opinion filed May 7, 2009.

Panel consists of
Chief Justice Hedges and Justices Anderson and Seymore.









[1]  C.G. was born with cerebral palsy and seizure and
bowel disorders.  His condition demanded special medical attention, requiring
him to see a doctor at least every six months in the years prior to his death. 
C.G.=s cause of death was later determined to be
complications from cerebral palsy with seizure disorder and chronic
debilitation.





[2]  Gonzalez initially told Willeford that her son was
on probation for drug possession.  However, Willeford later learned that
Gonzalez=s statements were false and that her son was actually
on probation for indecency with a child who was 11 years old.





[3]  The Department learned that appellant had two prior
misdemeanor theft charges from 2004 and 2006.  At the time of the children=s removal, appellant had an outstanding arrest warrant
for bond forfeiture and at least seven additional warrants. 





[4]  The termination proceedings below also involved the
two alleged fathers of J.S.G. and J.A.G.  At trial, evidence was introduced of
the fathers= identities and their lack of involvement with the
children.  Their parental rights were likewise terminated; however, they are
not parties to the instant appeal.





[5]  We note that similar to the issue raised in S.N., the Department=s argument here is one of statutory
interpretation, which is a legal issue subject to a de novo review.  Bragg
v. Edwards Aquifer Auth., 71 S.W.3d 729, 734 (Tex. 2002).  In construing
statutory provisions, our objective is to determine and give effect to the
Legislature=s intent.  In re Dep=t of Family & Protective Servs., 273 S.W.3d 637, 641 (Tex. 2009)
(orig. proceeding).  We assume that the legislature tried to say what it meant;
therefore, its words should be the surest guide to its intent.  Segal v.
Emmes Capital, L.L.C., 155 S.W.3d 267, 286 (Tex. App.CHouston [1st Dist.] 2004, pet. dism=d).  Based on the foregoing
principles, we adopt the statutory construction of subsection 161.001(1)(O)
articulated by the S.N. court and conclude that the plain and ambiguous
language of subsection 161.001(1)(O) requires that the child subject of the
suit be removed as a result of abuse or neglect.





[6]  Although appellant testified that she possibly tested positive for
propoxyphene because she was taking Vicodin after tooth surgery, she failed to
produce a prescription from a medical doctor or dentist.  The factfinder was entitled to reject appellant=s testimony and accept as true the Department=s evidence.  See Smith v. McLin, 632 S.W.2d 390, 392B93 (Tex. App.CAustin 1982, writ ref=d n.r.e.).  





[7]  At trial, appellant disputed the Department=s evidence of noncompliance with
the family service plan; she testified that she completed drug and alcohol
treatment and the parenting classes and was periodically employed with
temporary jobs.  However, the factfinder
was entitled to reject appellant=s
testimony and accept as true the Department=s
evidence.  See Smith, 632 S.W.2d at 392B93.