**Opinion issued August 2, 2012**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-11-00791-CV

———————————

## IN THE INTEREST OF E.C.R.

---

**On Appeal from the 314th District Court
Harris County, Texas
Trial Court Case No. 201004599J**

---

### OPINION DISSENTING FROM DENIAL OF EN BANC RECONSIDERATION

I respectfully dissent from the denial of en banc reconsideration. In this accelerated appeal, the panel reverses the trial court's decree terminating appellant M.R.'s parental rights to her minor child, E.C.R. The panel concludes that the evidence was legally insufficient to support the termination of M.R.'s parental

rights under Texas Family Code section 161.001(1)(O).[1] Having reached the conclusion that the Department of Family and Protective Services ("DFPS") failed to establish by clear and convincing evidence that M.R. violated section 161.001(1)(O), the panel finds it unnecessary to address the trial court's finding that termination was in E.C.R.'s best interest,[2] and it reverses and renders judgment denying DFPS's petition for termination of M.R.'s parental rights.

---

[1] TEX. FAM. CODE ANN. § 161.001(1)(O) (Vernon Supp. 2011).

[2] The factors relevant to a best interest determination include: (1) a child's age and physical and mental vulnerabilities; (2) the frequency and nature of out-of-home placements; (3) the magnitude, frequency, and circumstances of the harm to the child; (4) whether the child has been the victim of repeated harm after an initial report and intervention; (5) whether the child is afraid to return home; (6) the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home; (7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home; (8) whether there is a history of substance abuse by the child's family or others who have access to the child's home; (9) whether the perpetrator of the harm against the child had been identified; (10) the willingness of the child's family to seek out, accept, and complete counseling and to cooperate with supervising agencies; (11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable time; (12) whether the child's family demonstrates adequate parenting skills, including providing the child with adequate health and nutritional care, care and nurturance consistent with the child's development, guidance and supervision for the child's safety, a safe physical home environment, protection from exposure to violence even if not directed at the child, and an understanding of the child's needs and capabilities; and (13) whether an adequate social support system consisting of friends and an extended family is available to the child. *Id.* § 263.307(b) (Vernon 2008); *see In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam); *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976) (listing factors, including (1) child's desires, (2) current and future physical and emotional needs of child, (3) current and future physical danger to the child, (4) parental abilities of person seeking custody, (5) whether programs are available to assist person seeking custody in promoting

The panel's decision turns entirely on its determination that, in seeking termination of M.R.'s parental rights under subsection 161.001(1)(O), DFPS was required to prove not only that M.R. violated her Family Service Plan,[3] but also that it initially removed E.C.R. from M.R.'s possession due to immediate "abuse or neglect" of E.C.R. himself, disregarding as irrelevant all evidence of endangerment of E.C.R. and his siblings, abuse or neglect of E.C.R.'s siblings, risk of future abuse, neglect, and endangerment, and proof of E.C.R.'s best interests.

The panel's opinion in this case is based on two previous opinions from different panels of this Court: *In re A.A.A.*, 265 S.W.3d 507 (Tex. App.—Houston [1st Dist.] 2008, pet. denied), and *Mann v. Department of Family and Protective Services*, No. 01-08-01004-CV, 2009 WL 2961396 (Tex. App.—Houston [1st Dist.] Sept. 17, 2009, no pet.) (mem. op.). In all three of these cases, this Court held that, in cases in which DFPS seeks termination pursuant to subsection 161.001(1)(O), DFPS must present evidence that (1) not only did a parent fail to comply with a DFPS service plan setting out the steps the parent must take to regain custody of a child removed from that parent's custody for "abuse or

---

best interests of child, (6) plans for child by person seeking custody, (7) stability of home, (8) acts or omissions of parent that may indicate parent-child relationship is not proper, and (9) any excuse for acts or omissions of parent).

[3]     "The Family Service Plan is the trial court's order specifying the actions the parents had to take for the Department to return the children to their custody." *In re J.F.C.*, 96 S.W.3d 256, 298 n.1 (Tex. 2002) (Schneider, J., dissenting) (citing TEX. FAM. CODE ANN. § 161.001(1)(O)).

neglect," but that (2) DFPS removed the child at issue from the home due to the immediate "abuse or neglect" of that specific child. This Court also held that the fact finder may not consider as evidence of "abuse or neglect" evidence that DFPS predicated its removal decision upon the parent's admitted physical abuse of another child in the home.

In my view, this line of cases misconstrues Family Code section 161.001(1)(O) and violates the well-established standard of proof for termination of parental rights; the well-established standard of review for legal sufficiency of the evidence in a parental-rights-termination case; and the standard of proof and standard of review for termination under subsection 161.001(1)(O) due to the parent's violation of a Family Service Plan. This line of cases also leads to arbitrary and absurd results that conflict with opinions in similar cases from this Court, our fellow appellate courts, and the Texas Supreme Court and that directly contravene the express purpose of the parental rights termination statute as set out in both the Texas Family Code and in supreme court precedent. These cases thus undermine both the effectiveness and the purpose of section 161.001 in protecting the welfare and best interests of children and in "[p]romot[ing] the child's interest in a final decision and thus placement in a safe and stable home."[4]

---

[4] *In re L.M.I.*, 119 S.W.3d 707, 711 (Tex. 2003) (quoting *In re B.L.D.* 113 S.W.3d 340, 353 (Tex. 2003)).

4

Texas Rule of Appellate Procedure 41.2 provides, "En banc consideration of a case is not favored and should not be ordered unless necessary to secure or maintain uniformity of the court's decisions or unless extraordinary circumstances require en banc consideration." TEX. R. APP. P. 41.2(c). This case merits en banc review on both grounds. Therefore, I respectfully dissent from the denial of en banc reconsideration. I would hold (1) that appellant failed to complete a court ordered Family Service Plan pursuant to Family Code section 161.001(1)(O), as required for the return of E.C.R. following his removal by DFPS pursuant to the procedures set out in Family Code Chapter 262, "Procedures in Suit by Governmental Entity to Protect Health and Safety of Child,"[5] and (2) that termination is in E.C.R.'s best interest. I would affirm the judgment of the trial court terminating M.R.'s parental rights.

## Standard of Review

"The State's fundamental interest in parental-rights termination cases is to protect the best interest of the child. This interest is aligned with another of the child's interests—an interest in a final decision on termination so that adoption to a stable home or return to the parents is not unduly prolonged." *In re M.S.*, 115 S.W.3d 534, 548 (Tex. 2003); *see also In re L.M.I.*, 119 S.W.3d 707, 708, 711 (Tex. 2003) (noting "the Legislature's dual intent to ensure finality in these cases

---

[5] TEX. FAM. CODE ANN. §§ 262.001–.309 (Vernon 2008).

and expedite their resolution" and its "intent that cases terminating parental rights be expeditiously resolved, thus 'promot[ing] the child's interest in a final decision and thus placement in a safe and stable home'") (quoting *In re B.L.D.*, 113 S.W.3d 340, 353 (Tex. 2003)).

The Texas courts have long recognized that "[a] parent's interest in the accuracy and justice of the decision to terminate his or her parental status is . . . a commanding one." *M.S.*, 115 S.W.3d at 547 (quoting *Lassiter v. Dep't of Soc. Servs.*, 452 U.S. 18, 27, 101 S. Ct. 2153, 2160 (1981)). However, the child also has a substantial interest in the proceedings. *Id.* "Indeed, the Family Code's entire statutory scheme for protecting children's welfare focuses on the child's best interest." *Id.* (citing TEX. FAM. CODE ANN. §§ 153.002, 161.001(2), 263.306(4), (5)). The statutory scheme thus comports with "[t]he public policy of this state[, which] is to . . . provide a safe, stable, and nonviolent environment for the child." *In re A.V.*, 113 S.W.3d 355, 361 (Tex. 2003) (quoting TEX. FAM. CODE ANN. § 153.001 (a)(2)). Although termination can result in a parent's loss of her legal relationship with the child, the primary focus is on protecting the best interest of child. *Id.*

Because termination of parental rights "is complete, final, irrevocable, and divests for all time that natural right . . . [,] the evidence in support of termination must be clear and convincing before a court may involuntarily terminate a parent's

rights." *Holick v. Smith,* 685 S.W.2d 18, 20 (Tex. 1985) (citing *Santosky v. Kramer,* 455 U.S. 745, 747–48, 102 S. Ct. 1388, 1391–92 (1982)). "The Texas Legislature has now codified the clear-and-convincing standard in Family Code § 161.001(1), (2), which provides: a 'court may order termination of the parent-child relationship if the court finds by clear and convincing evidence' that the parent has engaged in certain listed conduct and 'termination is in the best interest of the child.'" *In re C.H.*, 89 S.W.3d 17, 23 (Tex. 2002). Clear and convincing evidence is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (Vernon 2008); *In re J.F.C.*, 96 S.W.3d 256, 264 (Tex. 2002).

In conducting a legal-sufficiency review in a parental-rights-termination case under Family Code section 161.001, we must look at all the evidence to determine whether the evidence viewed in the light most favorable to the finding is such that the fact finder could reasonably have formed a firm belief or conviction about the truth of the matter on which DFPS bore the burden of proof. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005); *J.F.C.*, 96 S.W.3d at 266. We "must consider all of the evidence, not just that which favors the verdict." *J.P.B.*, 180 S.W.3d at 573; *J.F.C.*, 96 S.W.3d at 266. We "must assume that the fact finder resolved disputed facts in favor of its finding if a reasonable fact finder could do so," and

7

we "should disregard all evidence that a reasonable fact finder could have disbelieved or found to be incredible." *J.P.B.*, 180 S.W.3d at 573; *J.F.C.*, 96 S.W.3d at 266; *see also Jordan v. Dossey*, 325 S.W.3d 700, 712–13 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) (when legal sufficiency of evidence in parental rights termination suit is challenged, reviewing court should look at all evidence in light most favorable to finding to determine whether reasonable trier of fact could have formed firm belief or conviction that its finding was true, disregarding all evidence that reasonable factfinder could have disbelieved or found incredible, but not disregarding undisputed facts that do not support finding, as doing so could skew analysis of whether there is clear and convincing evidence that matter that must be proven is true).

"[T]ermination findings must be upheld against a factual sufficiency challenge if the evidence is such that a reasonable jury could form a firm belief or conviction that grounds exist for termination under Texas Family Code sections 161.001 and 161.206(a)." *C.H.*, 89 S.W.3d at 18–19. To reverse a case on insufficiency grounds, "the reviewing court must detail the evidence relevant to the issue of parental termination and clearly state why the evidence is insufficient to support a termination finding by clear and convincing evidence." *Id.* at 19. In *C.H.*, the supreme court emphasized that, in applying the "clear and convincing"

evidence standard, the appellate courts "must maintain the respective constitutional roles of juries and appellate courts." *Id.* In that regard,

> An appellate court's review must not be so rigorous that the only fact findings that could withstand review are those established beyond a reasonable doubt. . . . While parental rights are of constitutional magnitude, they are not absolute. Just as it is imperative for courts to recognize the constitutional underpinnings of the parent-child relationship, it is also essential that emotional and physical interests of the child not be sacrificed merely to preserve that right.

*Id.* (citation omitted).

Accordingly, in a case to terminate parental rights brought by DFPS under section 161.001, DFPS must establish, by clear and convincing evidence, (1) that the parent committed one or more of the enumerated acts or omissions justifying termination and (2) that termination is in the best interest of the child. TEX. FAM. CODE ANN. §161.001(1)–(2) (Vernon Supp. 2011); *C.H.*, 89 S.W.3d at 23. Both elements must be established, and termination may not be based solely on the best interest of the child as determined by the trier of fact. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987). However, "[o]nly one predicate finding under section 161.001(1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest." *A.V.*, 113 S.W.3d at 362. Thus, if multiple predicate grounds are found by the trial court, we will affirm on any one ground because only one is necessary for termination of parental rights. *In re D.S.*, 333 S.W.3d 379, 388 (Tex. App.—

Amarillo 2011, no pet.); *In re S.N.*, 272 S.W.3d 45, 49 (Tex. App.—Waco 2008, no pet.).

We are bound by the unchallenged findings of the trial court supporting termination. *D.S.*, 333 S.W.3d at 388. However, this Court has held that, in reviewing the sufficiency of the evidence to support the trial court's termination of parental rights when the findings of the trial court are challenged, the court is limited to reviewing the grounds for termination explicitly relied upon by the trial court, even if DFPS pleaded other grounds for termination that are supported by the evidence. *Cervantes-Peterson v. Tex. Dep't of Family & Protective Servs.*, 221 S.W.3d 244, 251–52 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (en banc), *overruling Thompson v. Tex. Dep't of Family & Protective Servs.*, 176 S.W.3d 121 (Tex. App.—Houston [1st Dist.] 2004, pet. denied).[6]

---

[6] While this Court has relied on *Cervantes-Peterson v. Texas Department of Family and Protective Services*, 221 S.W.3d 244 (Tex. App.—Houston [1st Dist.] 2006, no pet.), in several parental rights termination cases, I have found no citations to this case by other courts; nor does this Court cite any authority for its ruling in *Cervantes-Peterson*.

I believe that *Cervantes-Peterson*'s ruling on this point is contrary to well-established law, including family law, holding that when a trial court does not issue findings of fact and conclusions of law, it is implied that the trial court made all findings necessary to support its judgment and the judgment must be affirmed if it can be upheld on any legal theory that finds support in the evidence. *See Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990) (per curiam) (applying rule in context of modification of child support ordered in divorce decree); *see also BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002) (applying rule in context of special appearance, stating "all facts necessary to support the judgment and supported by the evidence are implied"); *Mikuni Corp.*

10

## Termination under Subsection 161.001(1)(O)

In this case, DFPS pleaded and presented evidence supporting three grounds that are each independent justifications for the termination of M.R.'s parental rights: subsections 161.001(1)(E), 161.001(1)(L), and 161.001(1)(O).

Subsection 161.001(1)(E) requires that the trial court find by clear and convincing evidence that the parent whose rights DFPS seeks to terminate has "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." TEX. FAM. CODE ANN. § 161.001(1)(E). Subsection 161.001(1)(L) requires that the court find that the parent has "been convicted or has been placed on community supervision, including deferred adjudication community supervision, for being criminally responsible for the death or serious injury of a child" under, among other provisions, Penal Code section 22.04, "injury to a child, elderly individual, or disabled individual." *Id.* § 161.001(1)(L). Subsection 161.001(1)(O) requires that the court find that the parent has

---

v. Foster*, No. 01-11-00383-CV, 2012 WL 170603, at *2 (Tex. App.—Houston [1st Dist.] Jan. 19, 2012, no pet.) (mem. op.) (same).

I further believe that this Court's rejection of the rule that "all facts necessary to support the judgment and supported by the evidence are implied" in termination of parental rights cases contributed to the incorrect rulings and holding in the instant case. *See* Slip Op. at 15–16 (citing *Cervantes-Peterson*, 221 S.W.3d at 252).

Therefore, I would overrule *Cervantes-Peterson* as well, on en banc reconsideration, and I urge the supreme court to consider this an integral issue if it grants review of this case.

11

failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the [DFPS] for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child.

*Id.* § 161.001(1)(O).

In its final decree, the trial court found solely that M.R. violated subsection 161.001(1)(O), as it was entitled to do. *See A.V.*, 113 S.W.3d at 362 (holding that "[o]nly one predicate finding under section 161.001(1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest"). It also found that termination was in the best interest of E.C.R. The trial court did not make any findings with respect to subsections 161.001(1)(E) and 161.001(1)(L).

### A. Subsection 161.001(1)(O) under *In re A.A.A.* and *Mann v. DFPS*

This Court previously analyzed the requirements of subsection 161.001(1)(O) in two cases: *In re A.A.A.* and *Mann*. The first of these, *In re A.A.A.*, established the requirement in this Court that when DFPS seeks to terminate parental rights under section 161.001(1)(O), it must prove not only that the child was removed from the parent by DFPS under the authority granted by Family Code Chapter 262 and that the parent violated a court-ordered Family Service Plan, satisfactory completion of which was required to secure return of the child, but also that initial removal of the child from the parent by DFPS was, in

12

fact, triggered by "abuse or neglect" of that specific child. 265 S.W.3d at 513–15. Thus, to support termination pursuant to subsection 161.001(1)(O), DFPS not only has to establish, by clear and convincing evidence, (1) that it removed the child pursuant to its power under Family Code Chapter 262, which establishes procedures to be followed by DFPS to protect the health and safety of children, and (2) that the parent did not complete a court-ordered plan for return of the child, but also (3) that, at the time DFPS initially removed the child, that specific child was subjected to abuse or neglect. *See id.* at 516.

In *A.A.A.*, the appellant challenged the termination of her parental rights for failure to complete a Family Service Plan under subsection (O) on the ground that her child had not been removed from her home as a result of abuse or neglect, but simply because she had been arrested and she could not return to her child, whom she had left in a shelter. *Id.* at 513. DFPS argued that the supreme court had already addressed the issue of whether it must prove initial removal of the child at issue for "abuse or neglect" as a requirement for obtaining termination of parental rights under section 161.001(1)(O) in *J.F.C. Id.* at 514.

The panel acknowledged the standard of proof required by the supreme court in *J.F.C.* to justify termination under subsection (O), but considered it inapplicable to the question of whether DFPS had to prove that the child was actually initially removed for "abuse or neglect" of that specific child, quoting from *J.F.C.*:

The evidence establishes as a matter of law that the parents failed to comply with the court's orders specifying the actions the parents had to take for the DPRS to return the children to the parents. The record also conclusively establishes that the children were removed from their parents under Chapter 262 of the Family Code, and it is undisputed that they were in the DPRS's custody for more than nine months after their removal. Accordingly, the parental conduct described in subsection 161.001(1)(*O*) of the Family Code was established as a matter of law.

*Id.* (quoting *J.F.C.*, 96 S.W.3d at 278–79). The panel observed that, in *J.F.C.*, the supreme court held that the parent's violation of subsection 161.001(1)(O) was conclusively established without mentioning whether the child was removed for abuse or neglect, but it determined that "the specific question of whether a child must be removed under Chapter 262 for that child's own abuse or neglect was not brought before the court in *J.F.C.*," even though the supreme court "held that the evidence established parental conduct pursuant to subsection 161.001(1)(*O*) as a matter of law." *Id.* (citing *J.F.C.*, 96 S.W.3d at 277).

The panel cited several intermediate appellate court decisions it concluded held that a finding that "the child's removal from the parent was a result of abuse or neglect of the child" constitutes "a third element of subsection 161.001(1)(*O*)." *Id.* (citing, *inter alia*, *In re M.B.*, No. 07-04-0334-CV, 2004 WL 2867544, at *2 (Tex. App.—Amarillo Dec. 14, 2004, no pet.) (mem. op.)). It concluded that "[b]ecause the supreme court did not expressly hold that 'removal under Chapter 262 for abuse or neglect of the child' is *not* an element of subsection

14

161.001(1)(O), we must adhere to the unambiguous language of the statute," and it held that termination under subsection (O) requires proof that the child was initially removed by DFPS for "abuse or neglect" of that specific child.[7] *Id.* at 515 (emphasis in original). The panel held that termination under subsection 161.001(1)(O) was not supported by the record. *Id.* at 515–16. However, it affirmed the trial court's finding that termination was proper under subsection 161.001(1)(E). *Id.* at 516.

In *Mann*, as in *A.A.A.* and this case, DFPS moved for termination under both subsection (E) and subsection (O), and, as in *A.A.A.* but unlike this case, the trial court terminated Mann's parental rights pursuant to both subsection (E) and subsection (O). *Mann*, 2009 WL 2961396, at \*5, \*7. The *Mann* panel followed *A.A.A.* and held that "[Mann's] abusive acts towards A.S. [Mann's other child living in the home] cannot be considered as evidence that she abused or neglected C.M. [the child at issue in the termination suit] for the purposes of section 161.001(1)(O)." *Id.* at \*6. The *Mann* panel also discounted the relevance of evidence that Mann had failed to comply with a court-ordered service plan in A.S.'s case and that Mann had failed to secure housing at the time C.M., the child at issue, was born. *Id.* at \*7. The panel held, "While all of these factors may indicate risk to C.M. if he were to remain under appellant's care, they do not

---

[7]    The Fourteenth Court of Appeals agreed with this analysis in *In re S.N. See* 287 S.W.3d 183, 190 (Tex. App.—Houston [14th Dist.] 2009, no pet.).

indicate that appellant abused or neglected C.M., leading to his removal." *Id.* However, the *Mann* panel then considered the very same evidence—Mann's abusive conduct concerning A.S., her failure to obtain stable housing, and her failure to comply with a court-ordered service plan in A.S.'s case—as relevant to the determination of whether sufficient evidence supported termination pursuant to subsection (E). *See id.* at *8–9 ("We have held that 'the manner in which a parent treats other children in the family can be considered in deciding whether that parent engaged in a course of conduct that endangered the physical or emotional well-being of a child.'").

The *Mann* panel found that all of the evidence of child endangerment that it had discounted as irrelevant for purposes of termination under subsection (O) was relevant to termination under subsection (E). *Id.* at *6–12. Nevertheless, the *Mann* panel reversed the trial court's termination of Mann's parental rights, holding that DFPS failed to present sufficient evidence supporting termination pursuant to either subsection (E) or subsection (O). *See id.* at *13 (considering alleged abuse of sibling as relevant to subsection (E) analysis, but holding evidence insufficient to establish "*course* of conduct that endangered her son") (emphasis in original).

## B.     The Panel's Construction of Subsection 161.001(1)(O)

Here, relying on *A.A.A.* and *Mann*, the panel (1) failed to view the evidence that M.R. violated subsection 161.001(1)(O) in the light most favorable to the trial

court's finding, violating the standard of review; (2) refused to review the evidence supporting the trial court's predicate finding under subsection 161.001(1)(O) that M.R. violated critical provisions of her Family Service Plan as evidence of ongoing unfitness that risked future abuse or neglect were E.C.R. returned to her care; (3) refused to consider overwhelming evidence of M.R.'s neglect and abuse of all her children both before and after imposition of her service plan that demonstrably placed E.C.R. in danger of future abuse, including her physical abuse of E.C.R.'s four-year-old sister, Y.C., her incarceration for injury to a child, her attempted suicide while incarcerated, the removal of E.C.R.'s younger and older siblings from M.R., her neglect of E.C.R.'s medical needs, her mental instability, her homelessness and lack of employment, and her failures to take a psychiatric exam, find employment, or secure a stable home as required by her court-ordered Family Service Plan; (4) refused to review evidence that termination was in E.C.R.'s best interest as evidence supporting termination under subsection 161.001(1)(O); and (5) failed to find proof that E.C.R. was removed pursuant to Family Code Chapter 262 and had been in DFPS custody for more than nine months, together with evidence that M.R. violated her Service Plan, to be legally sufficient evidence to support termination under subsection 161.001(1)(O), contrary to *J.F.C.  See* 96 S.W.3d at 275–79.

17

In my view, *A.A.A.*, *Mann*, and the panel opinion in this case and the reasoning behind these cases violate both the standard of proof and the standard of review of parental-rights-termination cases and establish precedent in this Court that contravenes both established precedent and the purpose of the termination statute and is dangerous for the protection and safety of endangered children within the jurisdiction of this Court.

In this case, M.R. does not dispute that DFPS had temporary managing conservatorship of E.C.R. for more than nine months or that she failed to complete the actions necessary to obtain the return of E.C.R. as set forth in the trial court's temporary orders and her Family Service Plan. *See* TEX. FAM. CODE ANN. § 161.001(1)(O). Instead, she argues, and the panel agrees, that "DFPS did not establish by clear and convincing evidence that E.C.R. was removed from M.R.'s care *as a result of M.R.'s abuse or neglect of E.C.R.*" Slip Op. at 8 (emphasis in original). The panel opines, "For a trial court to terminate parental rights under section 161.001(1)(O), it must find that the child who is the subject of the suit was removed as result of the abuse or neglect of *that specific child.*" Slip Op. at 8 (emphasis added) (citing *Mann*, 2009 WL 2961396, at *6, and *A.A.A.*, 265 S.W.3d at 512–16). The panel justifies its decision on the ground that "[w]e previously have held that evidence of abuse or neglect of a sibling does not support

18

termination under section 161.001(1)(O)." Slip Op. at 8 (citing *Mann*, 2009 WL 2961396, at *6–7).

In following *A.A.A.* and *Mann*, the panel ignores its own recitation of the following facts as evidence of abuse or neglect justifying removal of E.C.R. from M.R.'s care and control by DFPS under Family Code Chapter 262:

(1) evidence that "E.C.R. was taken into DFPS's custody 'due to risk of [E.C.R.] being physically abused by the mother'";

(2) testimony by the caseworker, Ehiomen Etinfoh, that law enforcement had been called to an incident in which M.R. was allegedly abusing her four-year-old daughter, Y.C., that "a witness reported seeing M.R. drag Y.C. by her ponytail down the street at Interstate 45 and Greens Road," and that police arriving at the scene "observed Y.C. had a bruised lip, a cut on her forehead, dried blood on her nose and fresh bruising on her right ear and left eye;

(3) Etinfoh's testimony that, "while E.C.R. was not present during that incident, the incident resulted in M.R.'s being arrested and charged with injury to a child, Y.C.";

(4) Etinfoh's testimony that M.R. pleaded guilty and received four years' deferred adjudication community supervision as a result of the incident involving Y.C.;

(5) Etinfoh's testimony that, "while M.R. had completed some services, she had not completed the 'big' services required by the court's service plan, i.e., the psychiatric evaluation and psychological treatment," as well as the requirement that she find employment and provide stable housing for the children;

(6) Etinfoh's testimony that M.R. had lost custody of another son, A.J.;

(7) Etinfoh's testimony that E.C.R. was "very behind in his immunizations" and that E.C.R. "had to be caught up, up until he turned one years old on his shots" because M.R. "was not taking care of his medical needs";

(8) Etinfoh's testimony that M.R. had admitted to her that, in the year before the trial, she was "moving from house to house";

19

(9) Etinfoh's testimony that M.R. attempted to kill herself while she was in prison on the injury to a child charge;

(10) Etinfoh's testimony that M.R. had given birth to another child, younger than E.C.R., who currently lived in the same foster home as E.C.R.;

(11) Etinfoh's opinion testimony that she believed termination was in the best interest of E.C.R. because "M.R. could not provide him with a proper, stable environment, her mental status was questionable, she had not completed the psychiatric evaluation, and she was unemployed";

(12) Etinfoh's testimony that E.C.R. came into DFPS's care "based on risk" due to the allegation of injury to his sibling, Y.C.;

(13) Testimony of Lucinda Thomas, the child advocate, confirming her belief that E.C.R. should be removed from possession of M.R. "based upon alleged physical risk" to E.C.R.;

(14) Thomas's testimony that M.R. had failed to complete the required psychiatric and psychotherapy treatments; that M.R. had not lived in a home or had a job for six months; and that M.R. claimed she was unable to find a job due to complications with her last pregnancy, but she had not given Thomas any documentation of her inability to work;

(15) Thomas's testimony that, as of the date of the termination hearing, she recommended termination of M.R.'s parental rights based on alleged physical risk to E.C.R. and the fact that M.R. had not completed her services.

Slip Op. at 2–4.

The panel also disregards the following evidence cited by DFPS as evidence of M.R.'s abuse or neglect of E.C.R.:

(16) Language in M.R.'s Family Service Plan showing that, as of August 2, 2010, M.R. was living on the streets and did not have a support system; and

20

(17) "Additional Temporary Orders to Obtain Return of the Children" signed by the trial court on July 8, 2010, finding "danger to the physical health or safety" of E.C.R. and "a substantial risk of a continuing danger if the child is returned home."

Slip Op. at 9 (quoting findings).

The panel opines, "[T]he evidence here does not show neglect or negligent supervision of the child as a reason for DFPS involvement. . . . In fact, the Family Service Plan and Etinfoh's testimony both show that DFPS became involved as a result of M.R.'s abuse of E.C.R.'s sibling, *a factor that the court could not consider in reaching a finding under section 161.001(1)(O).*" Slip Op. at 12–13 (emphasis added). It also rejects DFPS's evidence that the Family Service Plan showed that M.R. was living on the streets as of August 2, 2010, and that M.R. did not have a support system as evidence of M.R.'s abuse or neglect of E.C.R. Slip Op. at 13. It explains:

> The language in the Family Service Plan here stated that M.R. was "currently" living on the streets "as of" August 2, 2010. The plan was written over one month after E.C.R.'s initial removal from M.R., on or about June 25, 2010, and almost one month after the adversary hearing on July 8, 2010, in which DFPS was given temporary conservatorship of E.C.R. Even considering the language in the Family Service Plan along with Etinfoh's testimony that M.R. told her that "last year" that she was "moving house to house," these statements, without more detail as to when this occurred or whether it was E.C.R. as opposed to M.R. that was in an unsafe or unstable living environment, cannot be considered evidence of abuse or neglect of E.C.R.

Slip Op. at 13–14.

21

The necessary implication of *A.A.A.*, *Mann*, and the panel's holding in this case is that if a child is removed from a parent's home in accordance with the procedures set out in Family Code Chapter 262, due to DFPS's reasonable professional assessment of danger and risk of future danger to the child, and a Family Service Plan is ordered to address the parent's abusive and neglectful behavior cited by DFPS as justification for initial removal, and the parent fails to comply with the plan and continues to exhibit behavior dangerous to the health and safety of any child returned to her custody, and, as a result, the parent's parental rights are terminated under subsection 161.001(1)(O), a reviewing court may not consider evidence of the parent's abusive conduct towards another child in the home, or anything other than immediate abuse or neglect of the specific child, given as reasons for the initial removal by DFPS, and it may not consider the evidence of risk of future abuse or neglect of the child due to the parent's failure to comply with the service plan, evidence that we have repeatedly held is relevant to a determination of whether the parent endangered the child pursuant to subsection 161.001(1)(E). *See Jordan*, 325 S.W.3d at 723; *Cervantes-Peterson*, 221 S.W.3d at 253; *Mann*, 2009 WL 2961396, at *8.

Instead, under this line of First Court of Appeals cases, the reviewing court must make its own determination of whether the child was initially removed from the parent's care by DFPS for "abuse or neglect" as it defines these terms, it "must

22

find that the child who is the subject of the suit was removed as result of the abuse or neglect of that specific child" under its own criteria, it must disregard as evidence that DFPS removed the child for abuse or neglect anything other than direct abuse or neglect of that specific child which was the immediate trigger for removal of that child, and it may not consider evidence that the parent is continuing to engage in behavior, such as homelessness, failure to obtain employment, and failure to take a psychiatric examination, in violation of her service plan that can only be reasonably construed as endangering to any child returned to her custody. *See* Slip Op. at 8–14.

Thus, in following *A.A.A.* and *Mann*, the panel fails even to consider the conclusive proof in the record that M.R. violated her Family Service Plan—the necessary predicate finding under subsection 161.001(1)(O). Nor does it consider the undisputed evidence of how she violated the plan—namely, by failing to take a court-ordered psychiatric exam, maintain stable housing, and obtain and maintain stable employment. Nor does it count as evidence that DFPS removed E.C.R. from M.R.'s care for "abuse or neglect" any of the evidence set out above as items (1)–(17). Thus, it fails to draw any connection between and among (1) the reasons given by DFPS for E.C.R.'s removal from M.R. pursuant to Chapter 262; (2) the entry of a Family Service Plan with requirements M.R. had to fulfill to obtain E.C.R.'s return; (3) M.R.'s failure to fulfill those requirements; and (4) the proof

23

required to establish a predicate act for termination under subsection 161.001(1)(O) for a parent's failure of to comply with her court-ordered Family Service Plan following removal of the child by DFPS under Chapter 262.

The panel reasons that "[w]hile M.R's abusive conduct toward Y.C. may have jeopardized E.C.R.'s well-being and served as evidence to support termination under section 161.001(1)(E), it is not evidence that E.C.R. actually sustained abuse or was neglected by M.R." Slip Op. at 8–9. The panel cites *In re D.M.*, 58 S.W.3d 801, 811, (Tex. App.—Fort Worth 2001, no pet.), for the proposition that "proving the element of a parent's endangering act under section 160.001(1)(E) 'may be satisfied by showing the parent in question engaged in a course of conduct that endangered the child's physical or emotional well-being.'" Slip Op. at 9. It then concludes, "Thus, M.R.'s abuse of Y.C. cannot be considered evidence that M.R. abused or neglected E.C.R. under section 161.001(1)(O)." Slip Op. at 9.

The analysis and holdings of *A.A.A.*, *Mann,* and the panel's opinion in this case are contrary to numerous opinions of the supreme court governing the standard of proof of termination cases in general, the standard of proof of termination in section 161.001(1)(O) cases in particular, the standard of review of parental-rights-termination cases, and the purpose of the parental-rights-termination statute and intent of the Legislature in enacting it, as set out above.

24

*See J.P.B.*, 180 S.W.3d at 573; *L.M.I.*, 119 S.W.3d at 708–11; *J.F.C.*, 96 S.W.3d at 266; *C.H.*, 89 S.W.3d at 19. In addition, the analysis and holdings conflict with the holdings in numerous factually similar parental-rights-termination cases of this Court and our fellow intermediate appellate courts.

I would hold that *A.A.A.* and *Mann* were wrongly decided. I would overrule them, and I would affirm the trial court's judgment terminating M.R.'s parental rights to E.C.R. under subsection 161.001(1)(O).

### C. Consequences of the Court's Construction of Subsection 161.001(1)(O)

#### 1. Conflicts with the Rules of Construction and Standard of Review

Subsection (O) is established, according to its plain language, by evidence that a parent

> failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the [DFPS] for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child.

TEX. FAM. CODE ANN. § 161.001(1)(O).

First, the natural reading of the unambiguous language of subsection 161.001(1)(O) is that the predicate for termination is established by proof (1) that the parent failed to comply with the provisions of a Family Service Plan that established the actions necessary for the parent to obtain the return of the child

25

(2) whom DFPS removed from the parent in accordance with Chapter 262, which establishes procedures in a suit brought by a governmental entity such as DFPS to protect the health and safety of children. *See id.* §§ 262.001–.309 (Vernon 2008).

Under the construction of the standard of proof required for termination pursuant to subsection (O) espoused in *A.A.A.*, *Mann*, and the panel's holding in this case, however, no evidence supports termination under subsection (O) other than (1) evidence that the child was removed from the custody of the parent pursuant to Family Code Chapter 262, providing for removal for abuse or neglect, and has been in DFPS's custody for at least nine months; (2) evidence that the parent failed to comply with a Family Service Plan ordered as a condition of the parent's regaining custody; and (3) evidence that DFPS's initial removal of the child from the parent was triggered by immediate abuse or neglect of that specific child; and termination of the parent's rights with respect to the child is not justified unless all three of these things are shown by clear and convincing evidence, disregarding all other evidence in the record. This rule blatantly contradicts the standard of review for sufficiency of the evidence challenges in parental rights termination cases. *See J.P.B.*, 180 S.W.3d at 573; *J.F.C.*, 96 S.W.3d at 266; *C.H.*, 89 S.W.3d at 19.

Under *A.A.A.*, *Mann*, and the panel's holding, it becomes virtually impossible for DFPS to prove that a child removed from a home pursuant to

26

Chapter 262 was actually removed for abuse or neglect—because even child endangerment and all of the usual factors that assist in determining abuse or neglect or the best interest of the child, except for immediate abuse or neglect of that specific child, are ignored.  Thus, *A.A.A.*, *Mann*, and the panel's holding make it impossible, as a practical matter, for a trial court to properly order termination of the parental rights of a mentally unstable mother who neglects and physically and emotionally abuses her children by injuring them, failing to provide a stable home and environment, and failing to follow a Family Service Plan required for their return under subsection (O), effectively rendering subsection (O) a nullity.

Neither the construction of subsection 161.001(1)(O) by the supreme court in *J.F.C.* nor the plain language of the statute itself references or requires *additional* proof that DFPS not only initially removed a child from the care of a parent and brought suit for custody of the child under the procedures set out in Chapter 262, in accordance with its professional judgment that removal was required to protect the health and safety of the child, but that it initially removed that child for reasons an *appellate court* might determine would count as evidence justifying the initial removal.  Indeed, any such construction is plainly contrary both to the standard of proof set out in *J.F.C.* and to the plain language of the statute.

Moreover, when the construction of a statute is used, as this Court's construction of section 161.001(1)(O) has been used and is used in this case, to establish barriers to termination of the parental rights of a parent who the evidence clearly and convincingly shows is unfit and whose custody endangers the child, is contrary to the best interests of the child, and delays or prevents the final placement of the child in a safe and stable home, that construction is plainly contrary to the intent of the Legislature in enacting the parental rights termination statute. *See In re L.M.I.*, 119 S.W.3d at 708–11 (noting "the Legislature's dual intent to ensure finality in these cases and expedite their resolution" and its "intent that cases terminating parental rights be expeditiously resolved, thus 'promot[ing] the child's interest in a final decision and thus placement in a safe and stable home'") (quoting *In re B.L.D.*, 113 S.W.3d at 353).

The Texas Code Construction Act requires the presumptions that, in enacting a statute, the Texas Legislature intended the entire statute to be effective, that it intended a just and reasonable result, and that it favored the public interest—here, the public interest in protecting the best interests of the child—over any private interest. TEX. GOV'T CODE ANN. § 311.021 (Vernon 2005). In reviewing statutes, the primary objective of the courts is to effectuate the intent of the legislature. *Tex. Lottery Comm'n v. First State Bank of Dequeen*, 325 S.W.3d 628, 635 (Tex. 2010). Courts "rely on the plain meaning of the text as expressing

legislative intent unless a different meaning is supplied by legislative definition or is apparent from the context, or the plain meaning leads to absurd results." *Id.* Courts "presume the Legislature selected language in the statute with care and that every word or phrase was used with a purpose in mind." *Id.* "[T]he text is the best expression of legislative intent unless a different meaning is apparent from the context or the plain meaning leads to absurd or nonsensical results." *Jackson v. State Office of Admin. Hearings*, 351 S.W.3d 290, 295 n.3 (Tex. 2011).

"[E]very word of a statute must be presumed to have been used for a purpose. Likewise, . . . every word excluded from a statute must also be presumed to have been excluded for a purpose." *Id.* at 299 (quoting *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 540 (Tex. 1981)). There is no language in subsection 161.001(1)(O) that places on DFPS the burden of proving that it removed a child from the custody of a parent for immediate abuse or neglect of that specific child. The only burden expressed in the statute is the burden to show that the child "has been in the permanent or temporary managing conservatorship of the [DFPS] for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child." TEX. FAM. CODE ANN. § 161.001(1)(O). The natural reading of this language is that the child was removed under the procedures established in Chapter 262 for removing abused

29

or neglected children from a parent, and the supreme court has so held. *See J.F.C.*, 96 S.W.3d at 266.

The construction this Court has placed on Family Code section 161.001(1)(O) leads to absurd results, and that construction depends upon adding into the statute language the Legislature did not add or intend and that the supreme court, in construing the statute in *J.F.C.*, likewise did not add. Rather, the plain language is clear and unambiguous, and it does not support the reading this Court has given it. Thus, I disagree with the *A.A.A.* panel's conclusion that proper statutory construction required its reading of subsection (O), and I disagree with the current panel's application of the same construction of the statute in this case. I would grant en banc reconsideration of this case, and I would overrule *A.A.A.* and its progeny.

> 2. *Refusal to Consider Evidence Probative of "Abuse or Neglect" under Other Subsections of Section 161.001(1) and of the Best Interest of the Child under Section 161.001(2) as Probative under Subsection 161.001(1)(O)*

In addition to violating the rules of statutory construction and the standard of review of the evidence in termination cases, the result reached by the panel in this case conflicts with other cases of this Court affirming the termination of a parent's rights for behavior strikingly similar to that of M.R. For example, in 2010, this Court approved the termination of parental rights in similar circumstances—under

Family Code subsections 161.001(1)(D)[8] and (E), rather than under subsection (O)—for endangerment of the child. *Jordan*, 325 S.W.3d at 721–23. The Court stated that, when termination is based on subsection (D), "[T]he endangerment analysis focuses on the evidence of the child's physical environment, although the environment produced by the conduct of the parents bears on the determination of whether the child's surroundings threaten his wellbeing." *Id.* at 721. "It is not necessary that the parent's conduct be directed towards the child or that the child actually be injured; rather, a child is endangered when the environment creates a potential for danger which the parent is aware of but disregards." *Id.* The Court then pointed out that the relevant inquiry under subsection 161.001(1)(E) "is whether evidence exists that a parental course of conduct endangered the child's physical or emotional well-being." *Id.* at 723. Termination under subsection (E), unlike termination under subsection (D), "must be based on more than a single act or omission; what is required is a voluntary, deliberate, and conscious course of conduct," and that "conduct does not have to occur in the presence of the child" and may occur "both before and after the child's birth." *Id.*

In defining behavior that justifies termination under subsection (E), the Court opined, "Conduct that subjects a child to a life of uncertainty and instability

---

[8] TEX. FAM. CODE ANN. § 161.001(1)(D) ("knowingly plac[ing] or knowingly allow[ing] the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child").

31

endangers the child's physical and emotional well-being." *Id.* The Court further opined, "A parent's mental state may be considered in determining whether a child is endangered if that mental state allows the parent to engage in conduct that jeopardizes the physical or emotional well-being of the child." *Id.* But it did not stop there. It also opined, "A parent's mental instability and attempt to commit suicide may contribute to a finding that the parent engaged in a course of conduct that endangered a child's physical or emotional well-being." *Id.* at 724. And it opined, "Evidence as to how a parent has treated another child or spouse is relevant regarding whether a course of conduct under section E has been established." *Id.* Finally, it stated, "Evidence that a person has engaged in abusive conduct in the past permits an inference that the person will continue violent behavior in the future." *Id.*

While the mother whose rights were terminated in *Jordan* had also left her infant with his father, a violent drug-addicted sex offender, subjecting her own rights to termination under subsection (D), this Court also held that her rights were subject to termination under subsection (E) because she had "lived an unstable, transient lifestyle that indicates a pattern of engaging in conduct that would endanger [the child] emotionally and physically," including being evicted from a shelter for violent conduct, attempting suicide, residing at various times in a hospital or a shelter, and being homeless. *Id.* at 725.

32

The Court pointedly stated, "Although none of her conduct at that time was directed at harming [the child], endangering conduct is not limited to actions directed toward the child." *Id.* It concluded, "The trial court could reasonably determine that Jordan's propensity for violence against herself and others, want of self control, and transient life-style would endanger [the child] by giving him a life of instability and uncertainty." *Id.* (citing similar cases). Although there was evidence at the time of trial that Jordan had not been hospitalized for over two years and that her mental illness was in remission, the Court held that a fact finder could reasonably have formed a firm belief or conviction that Jordan knowingly engaged in conduct that endangered the physical and emotional well-being of the child; and, thus, the evidence was "legally sufficient to support the trial court's termination findings under section E." *Id.* at 726.

The panel not only ignores *Jordan* and all of the cases cited therein, it also ignores this Court's holding in *Walker v. Texas Department of Family and Protective Services*, 312 S.W.3d 608, 617 (Tex. App.—Houston [1st Dist.] 2009, pet. denied), and other cases in which we, and other courts, have held that evidence concerning how a parent has treated another child in the home is relevant to a determination that a course of conduct has had the effect of endangering a child so as to support termination of parental rights. *See, e.g.*, *In re M.R.J.M.*, 280 S.W.3d 494, 503 (Tex. App.—Fort Worth 2009, no pet.) (to support finding of

33

endangerment warranting termination of parental rights, parent's conduct does not necessarily have to be directed at child, nor is child required to suffer injury); *D.M.*, 58 S.W.3d at 811.

The panel presumably would be willing to find that the undisputed evidence that M.R. did not complete her Family Service Plan and the evidence of M.R.'s mental instability, imprisonment for injury to a child, suicide attempt, violence towards Y.C., E.C.R.'s four year-old-sister, loss of custody of her other children, transient lifestyle and unemployment—evidence that is strikingly similar to that found sufficient to justify termination under subsection (E) in *Jordan*—would justify termination of M.R.'s parental rights under subsection (E); and it might find that it demonstrates that termination is in E.C.R.'s best interest under section 161.001(2)—an issue it does not reach. But it disregards this evidence because the trial court did not terminate M.R.'s rights under subsection (E), on which DFPS also offered proof, but solely under subsection (O), and that is sufficient, in its estimation, to justify ignoring this evidence and overturning the trial court's judgment. The panel does not consider any of this evidence as evidence that termination was in E.C.R.'s best interests. It does not consider any of this evidence for any purpose.

This Court's rulings in *Jordan* and *Walker*, as well as its holding affirming termination based on the parent's violation of subsection (E) and the trial court's

34

finding that termination was in the best interest of the child, are inconsistent with *A.A.A.*, *Mann*, and the panel's rulings and holding in this case. The *only* material difference between those cases and this case is that, here, the trial court chose to terminate M.R.'s rights under subsection (O), rather than under subsection (E). Thus, the mere fact that the trial court chose to terminate M.R.'s parental rights under subsection 161.001(1)(O), rather than under subsection 161.001(1)(E) or (L), introduces an element of radical arbitrariness into the outcome of appeals of termination cases. And this element of arbitrariness is exacerbated by this Court's refusal to define "abuse or neglect" for purposes of termination under subsection (O) in the same terms as under the other subsections of 161.001(1) and under section 161.001(2). In my view, holding that facts that constitute evidence of endangerment under subsection (E) and are relevant to an analysis under that subsection—e.g., evidence that the parent admittedly physically abused another child in the home and was placed on deferred adjudication for this conduct—do not constitute some evidence that the child at issue was properly removed from the home by DFPS for "abuse or neglect" is an unduly restrictive construction of "abuse or neglect" to the extent that "abuse or neglect" is required to be shown to support termination under subsection 161.001(1)(O), as opposed to under another subsection or section 161.001(2).

35

I have found no Texas cases, other than those from this Court, that consider testimony by a DFPS caseworker testifying as to the reasons for the initial removal of a child from a parent and to whether a parent had demonstrated compliance with a Family Service Plan designed to address the behavior for which the child was initially removed to be *no evidence* that the child was removed for abuse or neglect, and the case law on point demonstrates that other appellate courts do credit such evidence. *See, e.g.*, *In re J.S.*, 291 S.W.3d 60, 66–67 (Tex. App.—Eastland 2009, no pet.) (holding mother's inability to provide stable housing and basic necessities for her children to be significant deficiencies in consideration of compliance with provisions of court order establishing actions necessary for mother to obtain return of children that justified termination under section 161.001(1)(O), despite mother's achievement of some of plan's goals). Furthermore, several of our sister courts have upheld termination pursuant to subsection 161.001(1)(O) even when the parent who violates the Family Service Plan is not the same parent who initially abused or neglected the child, thus necessitating the removal of the child from the home by DFPS. *See, e.g.*, *In re S.N.*, 287 S.W.3d 183, 188–89 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (adopting this Court's requirement that DFPS prove that child was removed for "abuse or neglect," but holding that parent who fails to comply with court-ordered Family Service Plan for children removed because of abuse or neglect is not

36

required to be same parent whose acts or omissions caused child to be removed and placed into DFPS care in order to support termination of parental rights under subsection (O)); *see also In re C.D.B.*, 218 S.W.3d 308, 309–12 (Tex. App.—Dallas 2007, no pet.) (upholding termination of mother's parental rights under subsection (O) where mother failed to comply with service plan for return of children initially removed by DFPS for father's abuse of child during mother's absence); *In re S.M.*, No. 04-04-00194-CV, 2005 WL 418540, at *2–4 (Tex. App.—San Antonio Feb. 23, 2005, no pet.) (mem. op.) (finding evidence sufficient to support termination of mother's parental rights under subsection (O) where child was initially removed from home by DFPS due to boyfriend's physical abuse of one child and mother failed to complete Family Service Plan). *But see In re S.A.P.*, 169 S.W.3d 685, 705–06 (Tex. App.—Waco 2005, no pet.) ("At trial [the caseworker] unequivocally testified that S.A.P. was not removed for abuse or neglect by [father or mother], that S.A.P. was not abused or neglected by [father or mother], and that S.A.P. was removed only because of the risk because of [father and mother's] prior history. There is thus no evidence to support the application of subsection 161.001(1)(O) . . . .").

The result of this Court's construction of subsection 161.001(1)(O) is thus arbitrary rulings in similar cases, depending upon the subsection under which the

trial court elects to terminate parental rights among all those argued and supported by the evidence, and a divergence between this Court and other courts.

### 3.     Refusal to Consider Cross-Points

Finally, the panel also refuses to consider DFPS's cross-points as alternative grounds under section 161.001(1) for affirming the judgment of the trial court. These cross-points argued that (1) "[t]he trial court erred in denying the Department's request for parental termination on a finding under Subsection L, because the evidence is undisputed that [M.R.] pled guilty to injury to a child and that the injuries to the child were serious," and (2) "[t]he trial court erred in denying the Department's request for parental termination on a finding under Subsection E, because the evidence is undisputed regarding [M.R.]'s pattern of inappropriate parenting, instability and abusive conduct."

In refusing to consider DFPS's cross-points, the panel relies on the statement of this Court in *Vasquez v. Texas Department of Protective and Regulatory Services*, 190 S.W.3d 189 (Tex. App.—Houston [1st Dist.] 2005, pet. denied), that "a parental rights termination order can be upheld only on grounds both pleaded by [DFPS] and found by the trial court."  Slip Op. at 14 (quoting *Vasquez*, 190 S.W.3d at 194); *see also Cervantes-Peterson*, 221 S.W.3d at 251.  DFPS points out that the panel's opinion on this point, too, is in conflict with numerous cases of this Court permitting consideration of cross-points when the independent grounds

raised in the cross-points would not grant the appellee greater relief than that awarded by the trial court. *See Valadez v. MEMC Pasadena, Inc.*, 2011 WL 743099, at *1 n.1 (Tex. App.—Houston [1st Dist.] Mar. 3, 2011, no pet.) (mem. op.); *Helton v. R.R. Comm'n of Tex.*, 126 S.W.3d 111, 119–20 (Tex. App.—Houston [1st Dist.] 2003, pet. denied); *Dean v. Lafayette Place (Section One) Council of Co-Owners, Inc.*, 999 S.W.2d 814, 818 (Tex. App.—Houston [1st Dist.] 1999, no pet.). Here, of course, the relief awarded was the termination of M.R.'s parental rights under section 161.001(1) and (2).

Unlike the panel, I would consider DFPS's cross-points, and I would overrule *Vasquez* to bring this Court's application of the law on cross-points in the context of termination of parental rights into accord with its application of the law on cross-points in general, just as I would overrule *Cervantes-Peterson*'s holding that predicate acts under section 161.001(1) raised by DFPS and supported by the evidence, but not expressly found by the trial court, cannot be considered as grounds for affirming the trial court's judgment terminating parental rights. *See* n.6 *supra*.

**Conclusion**

*A.A.A.*, *Mann*, and the panel opinion in this case establish binding precedent in this Court that misconstrues the plain language of Family Code subsection 161.001(1)(O) contrary to supreme court precedent, misapplies the standard of

39

review of sufficiency of the evidence to support termination of parental rights under that subsection, and creates and applies a standard of proof for termination under subsection (O) that violates the rules of statutory construction, contravenes established law, conflicts with numerous other cases in this Court, and leads to arbitrary and capricious results that plainly thwart the intent of the Legislature in enacting statutory provisions for the termination of parental rights to protect the best interests of children and to assure that they are placed in safe and stable homes. I also fear that this Court's harsh and ultra-restrictive construction of the law regarding termination of parental rights will have serious repercussions for the safety of the children of this State by placing hyper-technical and insurmountable hurdles in the path of termination of the parental rights of a parent whose child has been removed from her custody by DFPS under Family Code Chapter 262 for abuse or neglect and who fails to correct the behavior giving rise to the child's removal. Therefore, I believe that en banc reconsideration of the panel opinion in this case is fully merited under Rule 41.2 of the Texas Rules of Appellate Procedure.

I respectfully dissent from the denial of en banc reconsideration. I would affirm the judgment of the trial court terminating M.R.'s parental rights to E.C.R.

Evelyn V. Keyes
Justice

Panel consists of Chief Justice Radack and Justices Jennings and Huddle.

En banc consideration was requested. *See* TEX. R. APP. P. 41.2(c).

Chief Justice Radack and Justices Jennings, Keyes, Higley, Bland, Sharp, Massengale, Brown, and Huddle participated in the vote to determine en banc consideration.

A majority of the Court voted to deny en banc consideration. *See* TEX. R. APP. P. 49.7.

Justice Keyes, dissenting from the denial of en banc reconsideration.