**Opinion issued October 1, 2013**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-11-00791-CV

_____

## IN THE INTEREST OF E.C.R., A Child

---

**On Appeal from the 314th Judicial District**
**Harris County, Texas**
**Trial Court Case No. 2010-04599J**

---

## MEMORANDUM OPINION ON REMAND

The relevant factual and procedural background is set forth in two previous opinions in this case. *See In re E.C.R.*, 390 S.W.3d 22, 24–26 (Tex. App.—Houston [1st Dist.] 2012), *rev'd*, *In re E.C.R.*, 402 S.W.3d 239, 240–42 (Tex. 2013). We previously held that legally insufficient evidence supported the judgment terminating M.R.'s parental rights under section 161.001(1)(O) of the

Family Code.[1]  *In re E.C.R.*, 390 S.W.3d at 27.  The Supreme Court of Texas reversed, holding that "abuse or neglect of the child," as used in subsection O, "necessarily includes the risks or threats of the environment in which the child is placed," which in turn includes "the harm suffered or the danger faced by other children under the parent's care."  *In re E.C.R.*, 402 S.W.3d at 248.  The Court remanded for consideration of an issue we did not reach—whether the evidence is factually sufficient to support the trial court's finding that termination of M.R.'s parental rights to E.C.R was in E.C.R's best interest.  We conclude that it is and, accordingly, we affirm.

### Standard of Review

In a factual sufficiency review, "the appellate standard for reviewing termination findings is whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations."  *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002).  By focusing on whether the factfinder could form a firm conviction or belief, the appellate court maintains the required deference for the factfinder's role.  *Id.* at 26.  "An appellate court's

---

[1]  Section 161.001(1)(O) provides that parental rights may be terminated if the parent has "failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child."  TEX. FAM. CODE ANN. § 161.001(1)(O) (West Supp. 2012).

2

review must not be so rigorous that the only factfindings that could withstand review are those established beyond a reasonable doubt." *Id.* We should consider whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding. *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.*

### Applicable Law

In a case to terminate parental rights by DFPS under section 161.001 of the Family Code, DFPS must establish, by clear and convincing evidence, that (1) the parent committed one or more of the enumerated acts or omissions justifying termination and (2) termination is in the best interest of the child. TEX. FAM. CODE ANN. § 161.001 (West Supp. 2012). Clear and convincing evidence is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 101.007 (West 2008); *In re J.F.C.*, 96 S.W.3d at 264. "Only one predicate finding under section 161.001(1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest." *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003).

There is a strong presumption that the best interest of the child will be served by preserving the parent-child relationship. *In re A.A.A.*, 265 S.W.3d 507, 516 (Tex. App.—Houston [1st Dist.] 2008, pet. denied). "The same evidence of acts or omissions used to establish grounds for termination under subsection 161.001(1) may be probative in determining the best interests of the child." *Id.* When reviewing whether termination of parental rights is in the child's best interest, we may consider, among other factors, the following: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individual seeking custody; (5) the programs available to assist the individual to promote the best interest of the child; (6) the plans for the child by the individual or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). This list is not exhaustive, and there is no requirement that DFPS prove all of the factors in order for the court to make a valid finding on the best interest of the child. *In re A.A.A.*, 265 S.W.3d at 517.

## Analysis

Reviewing these factors, we first consider evidence of E.C.R.'s desires. M.R. notes that E.C.R. was under the age of two at the time of trial and thus was unable to express his desires, and DFPS agrees that there is no evidence concerning the child's desires in this case. Accordingly, this factor does not weigh in our analysis.

Next, under the second and fourth *Holley* factors, we consider the evidence of E.C.R.'s present and future emotional and physical needs, and the evidence regarding M.R.'s ability to parent and provide for his needs. E.C.R.'s DFPS caseworker testified that E.C.R. does not have any special needs and that his current foster placement is meeting his physical and emotional needs. Regarding M.R.'s ability to parent and provide for those needs, M.R. concedes that she was unemployed at the time of trial, did not have stable housing, and had not completed her psychiatric evaluation or the follow up recommendation from her psychological evaluation. The record contains evidence confirming that M.R. has a history of homelessness, is mentally unstable, and has failed to complete a psychiatric evaluation or attend treatment. Further, the record shows that while she was incarcerated for physically abusing her daughter, M.R. attempted suicide twice. Throughout the pendency of this suit, M.R. remained unemployed, and she has offered no proof of an ability to provide financial support to E.C.R. Thus, the

5

evidence regarding these factors weighs in favor of the trial court's finding that termination of M.R.'s parental rights was in E.C.R.'s best interest. *See In re C.A.J.*, 122 S.W.3d 888, 894 (Tex. App.—Fort Worth 2003, no pet.) ("Without stability, income, or a home, appellant is unable to provide for the child's emotional and physical needs . . . [and her] unstable life threatens the physical well-being of the child and may put the child at risk of injury."); *In re J.I.T.P.*, 99 S.W.3d 841, 846–47 (Tex. App.—Houston [14th Dist.] 2003, no pet.) (finding evidence that parents could not provide stable environment, were mentally unstable, did not have a stable residence, and did not maintain consistent employment supported trial court's finding that termination of parental rights was in child's best interest).

With respect to the third *Holley* factor, evidence of the emotional and physical danger to E.C.R. now and in the future, M.R. argues that there is no evidence that E.C.R. was now in danger or would be in the future. However, evidence of past misconduct or neglect can be used to measure a parent's future conduct. *See In re A.M.*, 385 S.W.3d 74, 82 (Tex. App.—Waco 2012, pet. denied). Here, M.R. has lost custody of all of her children. Her oldest child was taken into DFPS custody based on an allegation of physical abuse, and her parental rights to that child were later terminated. Additionally, M.R. pleaded guilty to causing injury to her daughter, and received four years deferred adjudication. The

evidence related to this factor weighs in favor of the trial court's best interest finding. *See In re A.M.*, 385 S.W.3d at 82–83 (concluding that evidence of mother's history of neglecting and endangering children by exposing them to domestic violence supported trial court's finding that termination was in child's best interest).

M.R. asserts that there was "scant testimony" regarding the fifth *Holley* factor, programs available to assist her in promoting the best interest of the child. She argues that the failure to submit her psychological evaluation into evidence meant that the trial court had no knowledge of the recommendations made in the evaluation. However, E.C.R.'s caseworker testified that M.R. failed to complete "big services . . . which she needed," including a psychiatric evaluation, as ordered, and psychotherapy, as recommended by her court-ordered psychological evaluation. M.R. did not object to this testimony. Further, M.R. concedes on appeal that she had not completed "her psychiatric evaluation or the follow up recommendation from her psychological evaluation." Thus, there is some evidence of programs available to assist M.R., of which she did not avail herself, and on balance, this factor weighs in favor of the trial court's best interest finding. *See In re J.I.T.P.*, 99 S.W.3d at 847 (evidence of mother's failure to follow therapy plan as recommended by psychological evaluation weighed in favor of best interest finding).

7

Concerning factors six and seven, in which we examine the plans for the child by the individual and by the agency seeking custody and the stability of the home or proposed placement, the record reflects that DFPS's long term goal for E.C.R. is unrelated adoption. M.R. notes there was no evidence about DFPS's definitive plan for E.C.R.'s permanent adoption and few details about his current placement. According to M.R., this weighs against termination. But the record also reflects that E.C.R. is currently doing well in foster care. He and M.R.'s youngest son are in the same foster home, and his foster parents are meeting his physical and emotional needs. And we note that "the lack of evidence about definitive plans for permanent placement and adoption cannot be the dispositive factor [in a best interest analysis]; otherwise, determinations regarding best interest would regularly be subject to reversal on the sole ground that an adoptive family has yet to be located." *In re C.H.*, 89 S.W.3d at 28; *see also In re G.B. II*, 357 S.W.3d 382, 384 (Tex. App.—Waco 2011, no pet.) (finding that DFPS is not required to make permanent placement before party's parental rights may be terminated).

M.R. asserts that the eighth *Holley* factor weighs in her favor, because there is no evidence of acts or omissions that indicate that the existing parent-child relationship between herself and E.C.R. is not a proper one, and that the evidence shows that at the time E.C.R. was removed, he was clean, healthy, and

8

developmentally on target. The evidence that E.C.R. was clean, healthy, and developmentally on target at the time of removal weighs against termination, but we must also consider the fact that M.R. was charged with, and ultimately pleaded guilty to, injuring E.C.R.'s sister.

With respect to any excuses for the acts or omissions of the parent, the ninth *Holley* factor, M.R. points to the child advocate's testimony that M.R. was pregnant for most of the pendency of the case, and that M.R. told her that the pregnancy was a difficult one which rendered her unable to work. While this weighs in M.R.'s favor, we note that M.R. introduced no evidence that showed that she was unable to work during the pregnancy.

M.R. raises two additional factors she claims are relevant to our analysis. First, she became pregnant with her first child (not E.C.R.) while she was a minor in DFPS custody. Second, M.R. points to the child advocate's testimony that her recommendation if the case went forward at another time might be "different," but that on the date of trial, she was recommending termination.

M.R. presented some evidence that weighs against termination; nevertheless, after considering the entire record, we conclude that the evidence is factually sufficient for a reasonable factfinder to have formed a firm belief that termination of M.R.'s parental rights was in E.C.R.'s best interest. *In re J.F.C.*, 96 S.W.3d at 266.

## Conclusion

We affirm the judgment of the trial court.


Rebeca Huddle
Justice

Panel consists of Chief Justice Radack and Justices Jennings and Huddle.